WILLIAM H. KLAIR and JOHN LORT vs. WILMINGTON STEAM-
BOAT COMPANY, a corporation of the State of New Jersey.

*Common Carriers ; Duty of—Act of God or of the Public Enemy
—Inevitable Accident—Ordinary Wear and Tear, Loss
or Deterioration—Death of Animal from Dis-
ease—Negligence—Measure of
Damages.*

1. A common carrier is bound to exercise the strictest care, and to deliver
safely at their place of destination, the goods entrusted to him. He is regarded by
the law in the light of an insurer; and in case the goods are injured, lost or destroyed,
nothing will excuse or discharge him but the act of God, or of the public enemies. By
the act of God, is meant such inevitable accident as cannot be prevented by human
care, skill or foresight; but results from natural causes ; such as lightning and tempest,
floods, inundation, etc. Therefore, the inquiry is not whether the carrier has used
due care, or been guilty of negligence, but whether he can show that the loss happened
by inevitable accident or by the public enemies.

2. The carrier, however, is not to be held responsible for ordinary wear and
tear, and chafing of the goods in the course of their transportation, or for their ordi-.
nary loss or deterioration in quantity or quality, or for any inherent infirmity or tend-
ency to damage, depreciation or decay. If therefore the death of an animal received
by the defendant for carriage was due to an attack of meningitis of which the defend-
ant was not forewarned, and the defendant did all in his power to protect the animal'
after being so attacked, the loss would be due to inevitable accident and the defendant
would not be liable.

3. The ordinary rule controlling the subject of damages, in case the article
is lost, destroyed or injured during transportation, is the value of the article so lost,
destroyed or injured. If, however, there is a rule of the defendant company, of which
the defendant had notice when he shipped the goods, that the liability of the company
was fixed by the rate of freight paid, and that for the purpose of obtaining a certain
rate of freight he reported to the company a value of the goods, thereby limiting as it
were by tacit agreement, the liability to such a sum as was named by him, that would
be the amount of the liability of the company. But although there was such a rule, if
the defendant had no notice of it, the measure of damages would be the fair value of
goods at the time of shipment.

(*February 24, 1902.*)

LORE, C. J., and PENNEWILL and BOYCE, J. J., sitting.

*T. Bayard Heisel* for plaintiffs.

*Horace G. Knowles* for defendant.

Superior Court, New Castle County, February Term, 1902.

ACTION ON THE CASE FOR DAMAGES for the value of a horse (No. 164 May Term, 1901).

LORE, C. J., charging the jury:

Gentlemen of the jury :—William H. Klair, the plaintiff, has brought an action against the Wilmington Steamboat Company to recover the value of a gray Percheron mare, which he alleges he delivered on or about the 14th, or the 13th of May 1901, (the time we think not material in this case), to the Wilmington Steamboat Company here in this city, for safe carriage to the City of Philadelphia, claiming that at that time the defendant was a common carrier between Wilmington and Philadelphia. He claims that while in the care of defendant for such safe carriage, the mare was injured so that it subsequently died, and this suit is brought to recover from the defendant the sum of one hundred and seventy-five dollars ($175.00), as damages, which the plaintiff claims is a fair valuation of the mare.

The defendant, on the other hand, claims that it is not liable, that it exercised all due care that was incumbent upon it as a common carrier, and that the injuries to the horse did not result from any act or misconduct, or neglect on its part whatever.

It is conceded in this case that the defendant company was a common carrier, and that as such common carrier, on that day (either the 13th or 14th of May, 1901) received this mare from the plaintiff for transportation from Wilmington to Philadelphia.

We find the liability of common carriers nowhere better expressed than in our own reports, by Chief Justice Booth, in *McHenry vs. The Philadelphia, Wilmington & Baltimore R. R. Co., 4 Harr., 448-449* : " A common carrier is bound to exercise the

strictest care, and to deliver safely at their place of destination, the goods entrusted to him. He is regarded by the law in the light of an insurer; and in case the goods are injured, lost or destroyed, nothing will excuse or discharge him, but the act of God, or of the public enemies. By the act of God, is meant such inevitable accident as cannot be prevented by human care, skill or foresight; but results from natural causes; such as lightning and tempest, floods and inundation, etc.

" This rule of the common law has been spoken of as severe and rigorous; but like most of the principles of the common law, it is founded in wisdom, and dictated by sound policy. The exigencies of society require the adoption of the rule. Men engaged in the various business transactions of life, are obliged from necessity to entrust common carriers with their goods. If such carriers are to be excused from all loss, destruction of, or injury to goods, in case it be shown that they have used due care, precaution, or attention, the party employing them, could never show the want of such care, unless he had an agent to accompany his goods during the whole time occupied in their transportation. The carrier might at all times by fraud and collusion, or by means of his own agents or servants, throw the burden of proof upon the owner or consignee of goods, by making out a statement of facts, which although untrue in itself, would show the exercise of ordinary care and diligence

" Therefore, in actions against common carriers, founded on their ordinary liability for the loss of goods, the inquiry is not whether the carrier has used due care, or been guilty of negligence but whether he can show that the loss happened by inevitable accident or by the public enemies."

That doctrine is stated also in *Reed & Walker vs. P., W. & B, R. R. Co., 3 Houst., 206;* and is modified to some extent by Chief Justice Gilpin in *Truax vs. P., W. & B. R. R. Co., 3 Houst., 245,* as follows: " And, as common carriers, they are held responsible for all losses, except those occasioned by inevitable accident, called the act of God, or of the public enemy. The act of God denotes such causes as are beyond the control of the carrier, and produce

loss without the intervention of human agency. This rule of law, however, must be understood with the following qualificatians, namely, that the carrier is not to be held responsible for ordinary wear and tear, and chafing of the goods in the course of their transportation, or for their ordinary loss or deterioration in quantity or quality, or for any inherent natural infirmity or tendency to damage, depreciation or decay, etc."

We say to you therefore, that if you believe from the evidence that the injury to, and death of this animal was due to an attack of meningitis of which the defendant was not forewarned, and that defendant did all in his power to protect the animal after being so attacked with meningitis, then that would be an unavoidable accident.

Having given you thus far the principles of law governing the liability of a common carrier, the next question is as to the matter of damages.

The ordinary rule controlling the subject of damages, in case the article is lost, destroyed or injured during transportation, is the the value of the article so lost, destroyed or injured. But we will say to you in this case, that if you believe from the evidence that there was a rule of the company, of which the plaintiff had notice when he shipped this mare, that the liability of the company was fixed by the rate of freight paid, and that for the purpose of obtaining a certain rate of freight he reported to the company a value of the mare, thereby limiting as it were by tactit agreement, the liability to such a sum as was named by him, that would be the amount of the liability of the company. Otherwise, although there may have been such a rule, if he had no notice of it, the measure of damages would be the fair value of the mare at the time of shipment, if the injuries and death resulted from the defendant's want of care, as a common carrier as we have laid the law down to you covering the matter.

                Verdict for plaintiff for $100.