[No. 7632. Decided December 11, 1908.]

JOSEPH KUHNIS, *Appellant*, v. LEWIS RIVER BOOM AND LOGGING COMPANY, *Respondent*.[1]

NAVIGABLE OBSTRUCTIONS—DAMAGES FROM BOOM—ACT OF GOD. The maintenance of a boom in a navigable river whereby the overflow from extraordinary floods is turned against and washes away the opposite banks, renders the owner of the boom liable for the damages; and the same cannot be excused on the plea that an extraordinary flood is an act of God, where floods of equal or greater force had been known six or seven times, since the flood might have been reasonably anticipated.

SAME—INSTRUCTIONS. In an action for damages from the maintenance of a boom in a navigable river, causing a flood to wash away the opposite banks, error in instructing that an extraordinary flood is an act of God, imposing no liability upon the owner of the boom for damage done, is not cured by a subsequent instruction to the effect that there would be no liability if the damage was caused by sudden unusual floods that could not be anticipated or guarded against; prejudice being presumed from error until the contrary conclusively appears from the record.

SAME — DAMAGES — MITIGATION. In an action for damages for diverting flood waters of a stream and washing away plaintiff's barn and contents, it is error to instruct that the plaintiff cannot recover

[1]Reported in 98 Pac. 655.

any damage for their loss, if he refused to permit the defendant to remove the property to another location of safety; since plaintiff was not bound to incur extraordinary expense disproportionate to the results, and there would be at least an element of damage in the choice of location and value of the property after it was moved.

Appeal from a judgment of the superior court for Cowlitz county, McCredie, J., entered November 27, 1907, upon the verdict of a jury rendered in favor of the defendant, in an action in tort. Reversed.

*Pearcy & Wintler* and *John T. McKee*, for appellant, contended, among other things, that the act of God was not set up as a defense, and therefore evidence of a state of facts amounting to an act of God is not admissible. *Pengra v. Wheeler*, 24 Ore. 532, 34 Pac. 354; Bailey, Onus Probandi, 296; *Hunter v. Grande Ronde Lumber Co.*, 39 Ore. 448, 65 Pac. 598. The facts proved did not constitute an act of God, but were such manifestations of nature as confessedly have occurred frequently within the memory of man, and may be reasonably expected to occur again. *Gulf Red Cedar Co. v. Walker*, 132 Ala. 553, 31 South. 374; *Southern R. Co. v. Plott*, 131 Ala. 312, 31 South. 33; *Pittsburg etc. R. Co. v. Gilleland*, 56 Pa. St. 445, 94 Am. Dec. 97; *Gulf etc. R. Co. v. Pomeroy*, 67 Tex. 498, 3 S. W. 722; *International & G. N. R. Co. v. Halloren*, 3 Am. & Eng. R. R. Cases 343, 53 Tex. 46. Inasmuch as there was no act of God pleaded or proved, the instructions to the jury defining the act of God, and defining the liability of respondent in case an act of God concurred in or caused the injury, was error. *Breon v. Henkel*, 14 Ore. 494, 13 Pac. 289; *Woodward v. Oregon R. & Nav. Co.*, 18 Ore. 289, 22 Pac. 1076; *Anderson v. Oregon R. Co.*, 45 Ore. 211, 77 Pac. 119. It was error to instruct that the defendant would not be liable if the floods were sudden and unusual, even though the boom or its operations contributed to the injuries. 1 Am. & Eng. Ency. Law (2d ed.), pp. 575, 592-595, note 1; 2 Parsons, Contracts (5th ed.), 159; *Smith v. North American T. & T. Co.*, 20

Wash. 580, 56 Pac. 372, 44 L. R. A. 557; *Bullock v. White Star S. S. Co.*, 30 Wash. 448, 70 Pac. 1106; *Quincy Gas & Electric Co. v. Schmitt*, 123 Ill. App. 647. The only duty of a person, injured by the wrongful act of another, is to minimize his damages, where the same can be done, with ordinary effort and expense, and the third instruction therefore was error. 1 Sutherland, Damages (3d ed.), § 88; 13 Cyc. 75, 76: 8 Am. & Eng. Ency. Law (2d ed.), 605, 606, 607; *Galveston etc. R. Co. v. Ryan* (Tex. Civ. App.), 21 S. W. 1013; *Hurxthal v. St. Lawrence Boom & Lumber Co.*, 53 W. Va. 87, 44 S. E. 520, 97 Am. St. 954; *Armistead v. Shreveport etc. R. Co.*, 108 La. 171, 32 South. 456.

*A. L. Miller*, for respondent.

DUNBAR, J.—This action was commenced by plaintiff to recover damages from the defendant for the washing away of a portion of plaintiff's premises and property, alleged to have been caused by the construction and maintenance of a boom owned and operated by defendant in the Lewis river, on the opposite side of the river from plaintiff's land. The case was tried to a jury, and a verdict returned in favor of defendant. Plaintiff appeals.

Lewis river is a navigable, meandered stream, and respondent is a corporation, organized under the laws of the state of Washington for the purpose of constructing and operating a public boom. The question at issue on the trial was whether the boom caused the current to set across the stream and against the shore with greater volume and with more destructive force than it would have done if the boom had not been constructed where it was. The following instructions, among others, were submitted by the court to the jury, and the giving of such instructions is assigned as error by the appellant:

"(1) An extraordinary flood is an act of God, and imposes no liability upon him whose lawful structure is an instrument causing damages to others. The defendant was and is only bound to build and maintain its said boom as reasonable men

can foresee shall be necessary to meet the ordinary contingencies and demands of nature, and cannot be held liable for these extraordinary visitations whose comings could not have been anticipated or guarded against by the exercise of ordinary foresight.

"(2)   If the flood or floods that caused the damage to plaintiff's land were sudden and unusual floods whose comings could not have been anticipated or guarded against by the exercise of ordinary foresight, then the defendant is not liable for any damages caused thereby, notwithstanding the boom or its operations have contributed to the washing away of plaintiff's land.

"(3)   As to these items (referring to the barn, $1,000; hay $975, and feed $25, as per transcript, page 21), the question has been raised that the loss of same was due to the negligence of plaintiff in not saving same when he had an opportunity.   If you find defendant offered to remove this property to a place of safety, or assist in doing so, and the same could safely have been done, but was not done on account of plaintiff's refusal to save or permit this property to be saved, then you are to allow no damages on account of the loss thereof."

The term "Act of God" has received multifarious definitions.   It is defined in "Words and Phrases Judicially Defined," page 118, as follows:

"It is said to be that which is occasioned exclusively by the violence of nature; by that kind of force of the elements which human ability could not have foreseen or prevented, such as lightning, tornado, sudden squall of wind, and the like.   Again, it is said to be, at least, an act of nature which implies entire exclusion of all human agency whether of the carrier himself or of third persons.   It is called a disaster with which the agency of man has nothing to do.   It is defined to be a natural necessity, which could not have been occasioned by the interference of man, but proceeds from physical causes alone."

And a multitude of cases are cited to sustain these definitions. In *Niblo v. Binsse,* 44 Barb. 54, it is defined as any inevitable accident, and is construed to mean in law something in opposition to the act of man.   In *Klair v. Wilmington Steamboat Co.,* 4 Penn. (Del.) 51, 54 Atl. 694, it is said that by act of

God is meant some inevitable accident which cannot be prevent-
ed by human care, skill, or foresight.   It has also been de-
scribed as involving some notion of an accident from natural
causes impossible to be foreseen and impossible to be guarded
against.   In *Tompkins v. Dutchess of Ulster,* Fed. Case. No.
14,087a, the court said that the act of God which excuses a
common carrier from liability must be the immediate and
distinct result of providential events, sudden or overwhelming
in their character, which human foresight could not foresee.
It would not be profitable to incorporate any further defini-
tions of the term in this opinion.

It is contended that the court erred in instructing the
jury that an extraordinary flood was an act of God and im-
posed no liability upon him whose lawful structure was an
instrument causing damage to others.   We think this con-
tention must be sustained.   In the first place, there was no
allegation in the answer that the accident complained of was
caused by the act of God, and neither was there any proof
offered to that effect, the proof being that the flood which
caused the damage was extraordinary, but not that it could
not have been reasonably anticipated and guarded against by
ordinary prudence; for the testimony was that, during the
life of citizens in that community, floods equal to the one in
question had been known some six or seven times, on some
occasions even higher than it was at the time the damage was
wrought.

The respondent contends that, notwithstanding the fact
that the first instruction of the court might be erroneous, it
was error without prejudice, for the reason that the subse-
quent instruction of the court properly stated the law, and
that the jury would understand that the court was referring
to floods which ordinary prudence could not have foreseen or
guarded against.   But the term "Act of God" is an ex-
pression which conveys a portentous thought to the minds
of common people.   When the court instructed the jury that
an extraordinary flood was an act of God imposing no liabil-

ity upon the defendant in the case, and the evidence showed that the flood was extraordinary in the sense of not occurring every year, it is plain that the jury were misled by this instruction. In any event, it is the universal rule of this court that, when it is determined that error has been committed, the presumption that it was without prejudice must conclusively appear from the record. The court having injected into the case an element neither raised by the pleadings nor sustained by the testimony, and it not affirmatively appearing that the error was not harmful, we must conclude that the action of the court in the matter complained of constituted prejudicial error.

In *Gulf, Colorado & S. F. R. Co. v. Pomeroy*, 67 Tex. 498, a distinction is made between prudence required of a person where his own property is in danger, and that required where the property of other persons is involved, the court saying:

"A careful person in constructing a like improvement which endangered his own property, might prefer to take the risk of a loss from either ordinary or extraordinary floods to incurring the certain expense necessary to make an effectual provision against them. But this rule certainly would not do, when the property of others is subjected to the risk of destruction or damage. In our opinion the true test is, considering all the circumstances and especially the history of the stream, would a prudent man have anticipated such a flood as caused the damage. . . . Knowing that an extraordinary inundation has occurred more than once, and for that reason that it may occur again, a party who has constructed a work which obstructs its outflow and causes it to submerge the property of another to his damage, will not be permitted to defend against the wrong by setting up the fact that the floods not provided for have occurred only at long intervals."

This case seems to be exactly in point, and it seems to us states the law fairly, the testimony in this case showing that a flood of equal height and velocity had occurred several times prior to the occurrence of the one involved in this action. The contention of the appellant is not unreasonable, that the

result which would follow the instruction of the court would be unjust and that protection against an ordinary flood which occurs every year, simply to preserve the property for destruction by an extraordinary one, known to occur every six or seven years, after improvements had been made upon the land and it had been made more valuable, could not be justified under any theory of law or right. The further citation of cases, it seems to us, is unprofitable. We have examined many and are unable to find any case, including the cases cited by the respondent, that would sustain the instructions given in the matter complained of.

Again it is contended, and we think with justness, that the court erred in the third instruction complained of. In the first place, the court's instruction was in the alternative, that "if the defendant offered to remove this property to a place of safety, or assist in doing so." In order for the respondent to escape the responsibility, it must have offered to remove the property at its own expense. The duty of the appellant being only to make ordinary effort for the preservation of the property, it was not bound to make extraordinary effort or incur extraordinary expense disproportionate to the results to be obtained. Nor would his failure to make any effort result in depriving him of all damages, the law imposing upon him only the duty to minimize the damages. But conceding, without deciding, that the doctrine of minimizing the damages can arise in this kind of a case at all, in any event, the instruction was too broad and left out elements which must in all conscience be considered. The learned counsel for the respondent says the boom was a lawful structure, doing a legitimate business, and that if during a flood the boom increased the flow of water past the appellant's premises, and respondent, seeing the danger, offered to save the property free of cost, the appellant could not refuse to permit it to do so and still hold it responsible. But in addition to the fact that the statement in the brief is broader than the instruction to the court, there certainly must be an element

of choice in the matter of the location.  A man usually locates his barn or his house with reference to the convenience of the location.  The barn or the house is also a lawful structure doing a legitimate business, and it might very reasonably happen that the value of a barn would be very largely depreciated by moving it to another location, with reference to ingress and egress to and from the barn, and with reference to many things that are ordinarily taken into consideration when a barn is located.  This choice of location cannot be taken from the owner and given to somebody else.  A person who wishes to go into a business, be it ever so legitimate, cannot say to another person who has his houses and buildings on a certain location which has been chosen by him, "You must permit me to move your houses to another location on your premises or the business which I am instituting will damage them, and if you do not permit me I will not be responsible for the damages incurred."  So that at least there must be taken into consideration the difference between the value of the property after it is moved and its value where it was located by its owner.

We think, for the reasons assigned, that the judgment must be reversed and a new trial granted.

HADLEY C. J., FULLERTON, MOUNT, and CROW, JJ., concur.

CHADWICK, J., took no part.