[No. 16921. Department Two. March 6, 1922.]

## H. F. McClung et al., Respondents, v. King County, Appellant.[1]

Highways (61)—Defects—Duty of Maintenance—Liability of County—Statutes. Under Laws 1917, ch. 118, p. 468, providing that each county should maintain a "permanent highway maintenance fund" for the upkeep of permanent highways established within its limits by the state, to which fund moneys theretofore held by the state to the credit of the county for maintenance should be turned over to the county, which money was to be expended by the county for maintenance and repair of primary, permanent or like highways within its limits, the duty of maintaining such highways is placed on the county in its corporate capacity, and not as a direct agent of the state; and extends to the curing of defects in the original construction by the state, in view of the established rule of the courts prior to the enactment that "maintenance" is to be construed as the keeping of highways in a reasonably safe condition for ordinary travel. [See Rem. Comp. Stat., §§ 6821-6824.]

Same (64) — Defects — Notice to County — Evidence — Sufficiency. Notice to county commissioners that a highway was dangerous by reason of inherent defects is amply supported by evidence that its condition had been reported to them by the county engineer every year during a period of four years, with plans to obviate the defects.

Damages (80)—Personal Injuries—Excessive Verdict. A verdict for $10,000 for personal injuries is not to be deemed excessive, where, although not necessarily permanent, there was testimony that it might take years for recovery, and it appeared that some ten months after the accident the injured party was required to undergo an operation for the purpose of stopping hemorrhages and there was uncertainty as to the results of the operation at the time of trial.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered June 23, 1921, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for personal injuries sustained through a defective highway. Affirmed.

[1]Reported in 204 Pac. 1064

*Malcolm Douglas, Howard A. Hanson,* and *Wm. Parmerlee,* for appellant.

*Thos. D. Long,* for respondents.

TOLMAN, J.—This is an action to recover damages for personal injuries alleged to have been sustained by the respondent Myrtle P. McClung while traveling upon a public highway in King county. The plaintiffs were awarded a verdict of $10,000, and from a judgment thereon, the county appeals.

The facts admitted and which the jury may have found from conflicting evidence, are substantially as follows:

A highway, now known as permanent highway No. 14, has existed many years, extending some miles in a southerly direction from the city of Seattle to the town of Des Moines. Some years prior to the time in question, under the permanent highway act, Rem. Code, § 5879-1[1] *et seq.* (P. C. § 6157), this highway was paved with brick, laid on a cement foundation, without expansion joints, except one section, a mile in length, which was laid with expansion joints. On June 21, 1920, respondents were driving over this road in a truck, the husband operating the truck, and the wife with their two children on the seat beside him. The truck was not loaded. They were traveling at a speed of some thirteen miles per hour. To all appearances the road was in excellent condition, free from obstructions, and apparently safe for travel. Suddenly, and without any warning sound or indication, the pavement underneath the truck exploded with great force, tearing up about 200 square feet of the surface, hurling brick and debris into the air fifteen to twenty feet, and throwing large pieces of the paving material two feet or more in diameter clear of the roadway. The

[1]Note: See Rem. Comp Stat., § 6821 *et seq.*

force of the explosion stopped the truck instantly, and Mrs. McClung was thrown therefrom to the pavement, sustaining the injuries complained of. Other evidence in the case will be mentioned in the proper connection as we proceed.

The complaint charges negligence in three respects: (1) that the county adopted a plan for the improvement of the highway which was defective, specifying the alleged defects; (2) that the county was negligent in adopting such plan, and in constructing the road according to its specifications, in that it could, by the exercise of reasonable care and diligence, have ascertained that such defects existed in the plan in advance of the construction; (3) that the county failed and neglected to keep and maintain the road in a reasonably safe condition for ordinary travel after it had been constructed.

Upon the objection of the county, the trial court ruled out the evidence offered by respondent tending to prove the two first mentioned allegations of negligence, upon the theory that the county was acting as the direct agent and under the direction and control of the state in the adoption of plans and carrying out the construction work thereunder. The county, of course, does not complain of this ruling, so far as it goes, and, in the absence of a cross-appeal, its correctness is not now before us for review, and we must assume for present purposes that it was a proper holding. The county does, however, complain because the ruling was not extended so as to cover also the third charge of negligence as to upkeep and maintenance, contending that in these matters it acted as the direct agent of the state, using funds raised by state tax levies, and even if not, there would be no liability upon the county if it maintained the highway in the same or as good condition as it received it.

The act under which this improvement was constructed provides for maintenance after construction, as follows:

"Whenever the improvement of any permanent highway shall have been completed and accepted under the provisions of this act, the same shall be maintained in the same manner as is provided by law for the maintenance of other public highways and roads." Rem. Code, § 5879-12 (P. C. § 6169). [Rem. Comp. Stat., § 6784.]

If this means in the manner provided by law at the time of the enactment of that particular statute, then it places the duty to maintain upon the county, for, going back as far as 1903, by statute, the duty of maintenance of all roads was placed upon the county, with the single exception of state roads as defined by Rem. Code, § 5897 (P. C. § 6835) built entirely with state money, as provided by ch. 186, Laws of 1909, p. 649. Respondents contend that this act has been repealed, but whether so or not, it clearly does not apply to the highway now under consideration, which was built with money raised by assessment against the property benefited, and by a tax on the property of King county, levied by the state, it is true, carried into the permanent highway fund, but there held by the state to the credit of King county, and to be expended only in King county. But in any event, the act of 1911, from which we have quoted above, was amended in 1913 by ch. 154, Laws of 1913, p. 491, § 5, so as to provide:

"Five per cent of all moneys credited to each county under this act and which shall be derived from taxes levied for the year 1912 and subsequent years shall be set aside and expended by the board of county commissioners, upon vouchers approved by such board, for maintaining and repairing roads constructed under the provisions of this act and other roads of like character, and no part of such five per cent shall be

expended for any other purpose." (Rem. Code, § 5879-14).

And in 1917, the legislature, by ch. 118, p. 468 of the laws of that year, in providing for the maintenance of permanent highways, created in each county of the state "a county fund to be known as the 'Permanent Highway Maintenance Fund'"; directed that the moneys theretofore held by the state to the credit of the county for maintenance purposes, and other moneys as therein provided, should go into that fund, and in § 4, p. 469, of the act, provided:

"The county auditor shall issue warrants for the expenditures from said fund on vouchers approved by the engineer in charge and allowed by the board of county commissioners, which expenditures shall be for the sole purpose of maintaining and repairing primary and permanent highways or highways of like character and for equipment for the maintenance thereof within the respective counties, and the same shall not be expended for any other purpose except as hereinafter provided." [Rem. Comp. Stat., § 6824.]

So that, at and before the time of this accident, King county had possession and control of funds designated by law to be used for the purpose of maintaining this and other highways, both permanent and primary, and we see no escape from the conclusion that from the time the 1917 act took effect, at least, the whole duty of maintaining this highway was upon the county, not as a direct agent of the state, but in its corporate capacity.

But it is contended, even so, that the duty to maintain did not cast upon the county the burden of curing defects in the original construction, and that its obligations were fully performed when it repaired the ravages of time and use and kept the road in the condition in which it was left when the improvement was completed. If the word "maintain" were used in a strict, limited sense, and its dictionary meaning only

is to be applied, then there is force in this position, but to so construe it would be highly technical. As early as 1895, in the case of *Sutton v. Snohomish*, 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847, this court said:

"We think that where, as here, a city has exclusive control and management of its streets, with power to raise money for their construction and repair, a duty (when not expressly imposed by charter) arises to the public from the character of the powers granted to keep its streets in a reasonably safe condition for use in the ordinary modes of travel, and that it is liable to respond in damages to those injured by a neglect to perform such duty."

In *Dignan v. Spokane County*, 43 Wash. 419, 86 Pac. 649, it was said:

"The county is obligated to keep its highways in a reasonably safe condition for ordinary travel only, . . ."

These and many other cases from this court and from other courts are reviewed and approved in *Swain v. Spokane*, 94 Wash. 616, 162 Pac. 991, L. R. A. 1917D 754, and in the light of these decisions which established the rule long before the enactment of the statutes referred to, we are of the opinion that the legislature used the verb "maintain," in its various forms, in the sense required by the law thus laid down, that is, to maintain in a reasonably safe condition for ordinary travel. In any event, we held in *Stone v. Seattle*, 30 Wash. 65, 70 Pac. 249, 67 L. R. A. 253, that a municipality could not relieve itself from liability for defective streets because the defect was in the original plan.

It may be that in a case such as this, where there was an inherent defect, the evidence of notice should be convincing, but in this case it is clearly so. The county engineer and his assistant testified to some

twenty-three cases of bulges, breaks, and blowouts, substantially one-half of which were termed explosions, all occurring on this highway prior to this occasion, at points other than the one mile laid with expansion joints, and that the highway was reported to the county commissioners as dangerous by the county engineer in the years 1917, 1918, 1919 and 1920, and plans were presented to the commissioners to obviate the cause of these disturbances, orally in 1917, 1918 and 1919, and by written report in 1920, but no action was ever taken thereon, and nothing whatever was done to remove the cause, or at all, except, after a disturbance had occurred, to repair the damage caused thereby. We conclude that there was ample evidence to carry the case to the jury upon the only ground of negligence submitted by the trial court.

What has so far been said disposes of all the appellant's assignments of error except those relating to the amount of the verdict. It is strenuously contended that the verdict is so excessive as to indicate passion and prejudice on the part of the jury, and, in the light of the cold record, it does seem large. No one testified that the injuries were necessarily permanent, but at the time of the trial, some ten months after the accident, there was shown to be some improvement, though the extent and permanency thereof was left in doubt, and medical experts testified that while ultimate recovery was to be expected, and usually in such cases could be looked for in a few months, still individual cases differed, and it might take years. Considering the time which had intervened before the trial, the then recent operation for the purpose of stopping hemorrhages, the uncertainty of the results of that operation, and the indefinite character of the testimony as to final recovery, we are inclined to agree with the conclusion

of the trial court, who saw and heard the witnesses, that the amount of the verdict was not against the weight of the evidence, and could not be said to be the result of passion and prejudice.

The judgment appealed from is affirmed.

PARKER, C. J., FULLERTON, and MITCHELL, JJ., concur.

