[No. 20160.  Department One.  April 7, 1927.]

LEWIS SCOTT *et al., Respondents,* v. PACIFIC WAREHOUSE COMPANY, *Appellant.*[1]

[1] MASTER AND SERVANT (20-1)—WORKMEN'S COMPENSATION ACT—PLANT—PASSAGEWAY IN BUILDING. An employee of the lessee of a room in a building in which there were several tenants on the same floor using an elevator in control of the lessor, who was injured after leaving her work and while entering the elevator to leave the building, was not injured at "the plant" of her employer, within the workmen's compensation act; since the act must be liberally construed with reference to the employee's right to elect to sue a stranger if injured while away from the employer's plant, and is not intended to include a place over which the employer had no oversight or means of protecting the employee from the negligent acts of third persons.

[2] SAME (20-1)—WORKMEN'S COMPENSATION ACT—PLANT—WORK SHOP. Rem. Comp. Stat., § 7675, defining a work shop to mean

[1]Reported in 255 Pac. 138.

any plant, yard, premises, room or place . . . over which the employer has the right of "access" or control, does not make an elevator in a building under the control of the lessor and to which all lessees had access for the purpose of entering their rooms, a part of the workshop or plant of a lessee.

[3] DAMAGES (80)—EXCESSIVENESS—INJURIES TO THE PERSON. A verdict for $15,000 for personal injuries to a young woman who was injured while entering an elevator, is held excessive unless reduced to $11,000, where it appears that she was severely injured by a slight dislocation of the joints of the neck, suffered much pain, has incurred expenses of $1,000 for treatment, but in the opinion of experts, the injuries were not permanent and she would ultimately recover her normal condition.

Appeal from a judgment of the superior court for King county, Stern, J., entered April 19, 1926, upon the verdict of a jury in favor of the plaintiffs, in an action for damages for personal injuries. Reversed.

*Roberts & Skeel* and *Preston, Thorgrimson & Turner,* for appellant.

*Fred G. Clarke,* for respondents.

FULLERTON, J.—The appellant, Pacific Warehouse Company, is the owner of a building situated in the city of Seattle, the rooms in which are designed to be let, and which it lets, to small concerns desiring to engage in the business of manufacturing articles for the general trade. The building is some five stories in height, and it has near its center a passenger elevator serving each of the floors, and to which the lessees of the rooms and their employees have access. Sometime prior to March 20, 1925, the appellant leased to a manufacturing concern, known in the record as the Seattle Woolen Mills, a room on the fourth floor of the building. The lease was in writing, and, with reference to the elevator, contained the following clause:

"And the lessor shall furnish an operator for passenger elevator and shall run the same during business hours."

The precise nature of the business in which the lessee was engaged does not appear by the record, but it does appear that it used in its business power-driven machinery, that it employs workmen who work in extra hazardous occupations, and that its business is subject to the provisions of the workmen's compensation act. The room leased to the concern is only one of several on the same floor, all of which at the date above given were leased to similar manufacturing concerns. The door from the leased room opened into a hall which led by the passenger elevator, and it, as well as the elevator, was used in common by all of the several lessees and their employees in going to and leaving their places of work.

The respondent, Laura T. Scott, was, on March 20, 1925, an employee of the Seattle Woolen Mills. She quit work at five o'clock in the evening of that day, and shortly thereafter left the room in which she worked through the door leading into the hall above mentioned, passed through the hall a distance of some thirty-five feet to the elevator, and when the cage of the elevator stopped at the floor, attempted to enter it. By some negligent management of the cage, it was suddenly started while she was making the attempt to enter it, causing the cage to strike and injure her. For the injury suffered she brought the present action against the appellant, and recovered in the sum of $15,000. The appellant makes two assignments of error: First, that the respondent has no cause of action against it; and second, that the amount of the recovery is excessive.

The first of the assignments is based upon the provisions of the workmen's compensation act. To an understanding of the nature of the contention, it is unnecessary to quote from the act at length. It is enough to say that the act, with reference to the remedy of a workman injured while engaged as the employee

of another in an extra hazardous occupation, creates a fund and provides that on certain conditions the employee shall be compensated from the fund. The conditions are these: First, if the workman is injured at the plant of the employer while engaged in the course of his employment, whether the injury be caused by the negligence of his employer or by the negligence of a third person, the workman must seek compensation solely out of the fund. He cannot, under these conditions, maintain a common law action either against his employer or the third person; the compensating feature on his part being that he is entitled to the compensation the act awards for any injury so received, whether the injury be the result of his own negligence or otherwise. Second, if the injury be received while the workman is away from the plant of his employer and in the course of his employment by the negligent act of another, not in the same employ, he has the right of election either to take compensation under the act or to seek his remedy against such other in the ordinary course of law. For an injury received away from the plant of his employer and not in the course of his employment, the workman, of course, has the same rights against one negligently injuring him as has any other person; he is not then a workman in the sense of that term as it is used in the act.

[1] The sole question then is, in so far as the first contention of the appellant is concerned, was the respondent at the plant of her employer at the time she received her injury? In support of the contention that the respondent was at the plant, the appellant has called our attention to a number of cases from other jurisdictions, some of which are closely parallel in their facts to the facts of the present case. They are, however, severally, cases in which the court was con-

sidering the right of an injured workman to take under a compensation act unlike our own, and in which the court expressly states that the act is to be given a liberal construction with regard to the place of the accident. None of the acts there in review, furthermore, contains the somewhat peculiar feature of our own act—the feature which permits a stranger to the act, who neither contributes to the fund out of which compensation is made, nor for whose benefit the fund is created, to take advantage of it. Our construction of our own act has been more restricted. In *Burns v. Johns,* 125 Wash. 387, 216 Pac. 2, we said that the boundaries of the plant must be inflexible and limited, for otherwise it could not be known with certainty whether the workman was or was not away from the plant, and difficulty would be encountered in giving effect to all of the provisions of the act. In *Carlson v. Mock,* 102 Wash. 557, 173 Pac. 637, we held that, in view of the purposes of the act, the same liberal construction should be given to that part of the act giving the workman the right of election to sue a stranger for a negligent injury as is given to any other part of the act, for otherwise the workman would not only be denied a valuable right but it would be to put upon the industry a burden from which it ought in justice and right to be relieved. In the same case, we emphasized the right of control as an element in determining what constituted the plant of an employer; saying that the

". . . legislature never intended that the term plant should include more than that part of the employer's fixed property over which he has exclusive control,"

or should include a place

". . . over which the employer has no oversight or method of protecting the employee from the negligent or wrongful acts of third persons."

To the same purport are the cases of *Zenor v. Spokane & Inland Empire R. Co.*, 109 Wash. 471, 186 Pac. 849; *Diblasio v. Hunter*, 124 Wash. 98, 213 Pac. 470; *Mathewson v. Olmstead*, 126 Wash. 269, 218 Pac. 226, and *Shockey v. Royal Baking Powder Mfg. Co.*, 138 Wash. 223, 244 Pac. 549.

Tested by these rules, there would seem to be but little question that the respondent was away from the plant of her employer at the time she received her injury. The lease under which her employer held the room in which its plant was situated, gave the employer no right of control over the elevator or over the place at which the injury occurred. The right of control over the place was in the lessor, and the lessor had the sole right to determine the manner in which the elevator should be operated. The right to pass over the place, and the right to use the elevator in common with all of the other occupants of the building, was the sole right of the lessee, and if the hallway and the elevator were a part of its plant, they were also a part of the plant of every other occupant of the building, of which there were several on the same floor and many in the entire building.

[2] But the appellant cites us to the definition of a "workshop" contained in the act (Rem. Comp. Stat., § 7675) [P. C. § 3470], which reads as follows:

"Workshop means any plant, yard, premises, room or place wherein power-driven machinery is employed and manual labor is exercised by way of trade for gain or otherwise in or incidental to the process of making, altering, repairing, printing, or ornamenting, finishing or adapting for sale or otherwise any article or part of article, machine or thing, over which premises, room or place the employer of the person working therein has the right of access or control."

Stress is laid on the term "access" used in the definition, and it is argued that this term requires the particular place to be taken as a part of the plant of the employer. We have heretofore pointed out that the record does not disclose the nature of the business the respondent's employer carried on at his plant, and as the same section of the act defines the terms "Factory" and "Mill," within which the business might fall and which do not contain the word "access," it is somewhat difficult to understand why we should accept the quoted definition as controlling. But passing this, we cannot accept the definition as extending the plant beyond its natural limits. The employer and its employees have access to the public highways which lead to its plant, but no authority holds, and no sound reason requires it to be held, that these form a part of the plant. The same reason requires it to be held that the semi-public ways leading to the plant be held not to be a part of the plant, for over them the employer has no such governing control as to be able to protect its employees while passing along them from the negligent or wrongful acts of third persons.

Our conclusion, therefore, is that the respondent was not at the plant of her employer at the time she received her injury, and that she had the right to maintain an action against the person responsible for it.

[3] The second objection raises the question of the excessiveness of the verdict. There is but little question that the respondent's injuries were serious both in their effect and in their consequences. The injury was to her neck. It is not always easy to translate the technical terms of a learned profession into language comprehensible to one unlearned in that profession, but if we understand the learned surgeon who described the injury, there was a slight dislocation of one of the

joints of the neck, and a fracture of a bone therein; and that, while the dislocation was corrected, the fracture continues, preventing that free movement of her head natural to a normal person, or movement of any sort without resulting pain. She has, since the infliction of the injury, suffered almost constantly from sleeplessness and headaches, and at times has suffered from severe pains in the back of her head and neck; and at the time of the trial, which was had somewhere near a year after the injury, she was still so suffering, and was then unable to pursue the calling in which she was engaged at the time of her injury. It appears, furthermore, that she has incurred an obligation of nearly one thousand dollars for surgical, medical and hospital treatment, and is not yet free from medical care and its accruing expense. Nevertheless, it was the opinion of her medical attendant that her injuries were not permanent, and that she would ultimately recover her normal condition. The award the jury made is large; as much, in fact, as is commonly awarded in like cases where recovery is uncertain, or the injury hopeless of ultimate relief. For the reason that the injury is not of a permanent nature, we think the award of the jury is more than should be permitted to stand without at least submitting the question of the amount of the award to another jury. But the respondent is entitled to a substantial award, and should not unnecessarily be put to the burden of a new trial. If, therefore, within thirty days after the return of the remittitur from this court, she will, in writing, agree to accept a judgment for $11,000, a judgment will be entered in her favor for that sum, otherwise a new trial will be granted.

The judgment is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

TOLMAN, MAIN, and MITCHELL, JJ., concur.