[No. 22625.   Department One.   December 30, 1930.]

NORRIS C. BRADLEY *et al., Respondents,* v. THE CITY OF SEATTLE, *Appellant.*[1]

*A. C. Van Soelen, E. I. Jones,* and *Douglas D. Mote,* for appellant.

*Padden & Moriarty,* for respondents.

[1]Reported in 294 Pac. 554.

HOLCOMB, J.—Appellant owns and operates a municipal street railway. On June 13, 1929, Louise Bradley and her husband were passengers on one of the street car lines operated by appellant known as the Lake Burien line. The car in which they were riding collided head-on with another car operated by appellant on the same track. Mrs. Bradley, who will henceforth be referred to as if the only respondent, and her husband had boarded the car some time before the accident, and she was seated on the left side in the corner next to the motorman in the seat which ran parallel with the side of the car.

After leaving Austin street, going toward the city, the car line is a single track for some distance, and winds down the side of a hill at a considerable grade. When it reaches Michigan street, there is a switch wherein inbound and outbound cars pass. At the time in question, the car on which she was riding was approaching the switch from the south, and another car was approaching it from the north. When coming down the hill and about two hundred feet from the south end of the switch, the street car, because of caterpillars on the track, started to skid, got out of control, passed the switch and hit the other car at the north end of the switch.

When respondent and her husband saw a collision was inevitable, they, including the trainman on the front of the car, attempted to get away from the front toward the rear, so as to avoid flying debris that might be caused by the collision. Just as respondent started to arise, she was thrown to the floor by the force of the impact, and seriously injured.

The injuries she alleged and introduced proof to support (although there was considerable conflict in the evidence as to the reality of her injuries and the permanence thereof) consisted of being rendered un-

conscious, suffering concussion of the brain, hemorr-
hages of the nose, fracture of the coccyx bone and
wrenching of the upper vertebrae of the spine, wrench-
ing of the ligaments of the spine, a sprain of her left
shoulder, a bleeding condition of the rectum, exces-
sive menstruation, nervous shock and neurasthenia
which may be permanent.

Appellant denied the allegations of negligence and
liability, and affirmatively alleged that the injury, if
any, was due to an act of God and also to the con-
tributory negligence of respondent. The affirmative
matter alleged in the answer was controverted by
reply. The cause was tried before a jury which ren-
dered a verdict in the sum of $8,450 in favor of re-
spondent.

Appellant unsuccessfully moved for judgment n.o.v.,
or in the alternative, for a new trial on all the statu-
tory grounds. These motions being denied, this appeal
resulted.

The plea of contributory negligence is not urged
here.

The trial judge, by an instruction to the jury,
withdrew from their consideration the defense of the
act of God, or *vis major*. Appellant requested an in-
struction on that defense which reads:

"You are instructed that the defendant city has set
up as an affirmative defense that the collision of its
street cars, at the time and place of the accident, was
caused by *vis major* and by forces of nature beyond
the control of the defendant and which could not have
been anticipated or avoided by it, and that same was
an unavoidable accident and without any negligence
on the part of the defendant. You are further in-
structed that any accident due directly and exclusively
to neutral cause without human intervention, which
by no human foresight, pain or care, reasonably to have
been expected, could have been prevented, is an ac-

cident caused by *vis major* and that defendant is not liable for such an accident.''

The evidence as to the presence of caterpillars upon the track, although to some extent conflicting, is that they had been there for four or five days. The motorman, who had charge of the car on which respondent was a passenger, knew the day before and a few days before that, that the caterpillars were accumulating on the tracks. There had been more the day before than there usually had been. He had been up and down this street railway line five or six times the day before, and had noticed then a considerable number of caterpillars on the rails. He noticed for four or five days before that, in coming down the hill, it was more difficult to stop or control his car on account of the caterpillars, and on the day before he noticed that they created a slippery condition on the rails. He had actually slid the day before when attempting to make a stop.

On the outbound trip, on the day in question, over this track, forty-five minutes before the accident, he saw the caterpillars in great quantities and thicker than he had ever seen them on the track before. He knew that they would cause the street car to skid. He knew that, when they were present in such great quantities, they were dangerous for the operation of cars on the track. When he reached the end of the outbound trip on the morning in question, before starting back down the hill, he called the dispatcher and told him of the condition. The dispatcher replied that he had heard of the condition, and that he had a man on the road up there.

The motorman then started on the return trip, knowing that the caterpillars were on the tracks, and knowing the dangerous condition. When he came down the hill, he could see the caterpillars on the track in large

quantities, forty or fifty feet ahead, and piled up on the track. He said that, when he saw that condition, he was moving at the rate of three or four miles an hour, trying to avoid sliding. Respondent's witnesses testified that the car was going at a high rate of speed before hitting the caterpillars. The motorman said that, at the rate of speed he testified he was going, he could stop his car in ten feet. He did not stop, but kept on going, and, upon hitting the caterpillars, the car started to skid and skidded two hundred feet to the point of collision. The car could have been equipped with a brush such as is used to clear off snow from the tracks in the winter time, but was not so equipped until after this accident had happened. After that they went over the tracks with the brush ahead of the cars, and by so doing kept the tracks clear and safe for operation.

The instruction requested by appellant was defective because it disregards the degree of care required to be exercised by a common carrier of passengers, which is the highest degree of care. Appellant, as a carrier of passengers, is bound by the same degree of care as any other such carrier. When an injury occurs to a passenger for hire through some conveyance or apparatus of the carrier, in the absence of other showing, it must be assumed to have been due to the negligence of the employees of the carrier which is imputable to the employer. *Peterson v. Seattle Traction Co.*, 23 Wash. 615, 63 Pac. 539, 65 Pac. 543, 53 L. R. A. 586; *Firebaugh v. Seattle Electric Co.*, 40 Wash. 658, 82 Pac. 995, 111 Am. St. 990, 2 L. R. A. (N. S.) 836; *Walters v. Seattle, Renton & Southern R. Co.*, 48 Wash. 233, 93 Pac. 419, 24 L. R. A. (N. S.) 788; *Harris v. Puget Sound Electric R.*, 52 Wash. 289, 100 Pac. 838.

Appellant relies, in support of the contention that the caterpillars on the track constituted *vis major,*

upon *Topping v. Great Northern R. Co.*, 81 Wash. 166, 142 Pac. 425, L. R. A. 1915F 1174. The conditions existing in that case were vastly different from those here. In that case an immense snow and land slide descended from the mountain side upon the right of way and track of the railroad at a place where such slides had never occurred before. There, was undoubtedly *vis major* which no human foresight could have foreseen and prevented. In this case, there was no such overwhelming force.

*Neely v. Seattle,* 109 Wash. 266, 186 Pac. 880, had to do with unprecedented floods which were pleaded as *vis major* and submitted to the jury as to whether or not the floods were unprecedented, which the jury found were not. The case has no influence here.

This court has defined the act of God, or *vis major,* in *Kuhnis v. Lewis River Boom & Logging Co.,* 51 Wash. 196, 98 Pac. 655, as something—

" ' . . . which is occasioned exclusively by the violence of nature; by that kind of force of the elements which human ability could not have foreseen or prevented, such as lightning, tornado, sudden squall of wind and the like. Again, it is said to be, at least, an act of nature which implies entire exclusion of all human agency, whether of the carrier himself, or of third persons. . . .'

"It has also been described as involving some notion of an accident from natural causes impossible to be foreseen and impossible to be guarded against . . . the act of God which excuses a common carrier from liability must be the immediate and distinct result of providential events, sudden or overwhelming in their character, which human foresight could not foresee."

Compare *Maplewood Farm Co. v. Seattle,* 88 Wash. 634, 153 Pac. 1061.

It is manifest that, as applied to a common carrier such as appellant, owing the highest degree of care to passengers, the caterpillars upon the street car track

did not constitute such a sudden and overwhelming natural force as could not have been foreseen and reasonably guarded against.

The *Walters* case, *supra,* was a case where a quantity of clay had been deposited upon the railway track of a common carrier, which was alleged to have been caused by some agency not under its control. It was there observed:

"For a railway company carrying passengers to show merely that a collision was caused by some obstruction of the track, caused by an agency over which it had no control, is not enough to excuse it from responsibility for a collision. It must go further and show that it could not by the highest degree of care and diligence consistent with the practical operation of its railway have discovered and removed the obstruction prior to the time it operated its cars over the track."

We are satisfied that the court properly withdrew from the consideration of the jury the defense of *vis major*.

The court otherwise, by fair and lucid instructions, which are not complained of, carefully instructed the jury as to the duty of appellant and its employees toward the passengers under the issues raised by the pleadings.

Appellant also earnestly contends that the award made respondent is excessive. Although there is serious conflict in the evidence as to the actual extent of respondent's injuries, there is ample evidence of all the injuries alleged in the complaint, and that respondent had undergone much pain and suffering from the time of her injuries until the time of the trial, about nine months.

Since about fifteen years of age, she had always been employed in some gainful occupation. At the time of her injury, she had employment in which she was able

to earn from $14.50 to $20 per week. She had also worked in canneries and been able to earn from $20 to $31 per week. She was thirty years of age, and had never had anything physically the matter with her before. The mortality tables (41 C. J. 216) show her life expectancy to be thirty-five years. She had incurred medical and hospital bills amounting to $1,350, and had lost wages, for the nine months that she had been either in the hospital or confined to her home, which she would otherwise have been able to earn.

As compared with the injuries suffered by the woman in *Scott v. Pacific Warehouse Co.,* 143 Wash. 245, 255 Pac. 138, we consider the injuries inflicted upon respondent here, according to the evidence in her behalf, resolved in her favor by the jury, more numerous, more painful and probably more permanent, than those suffered by the woman in that case. There we directed a reduction of the judgment from $15,000 to $11,000. If $11,000 was not excessive in that case, $8,450 certainly is not in this. Compare *Ronald v. Pacific Traction Co.,* 65 Wash. 430, 118 Pac. 311; *Eoff v. Spokane, Portland & Seattle R. Co.,* 70 Wash. 270, 126 Pac. 533; *McClung v. King County,* 119 Wash. 14, 204 Pac. 1064; *Mathewson v. Olmstead,* 126 Wash. 269, 218 Pac. 226.

We find no error, and the judgment is affirmed.

MITCHELL, C. J., TOLMAN, MAIN, and PARKER, JJ., concur.