CONCEPCIÓN CAMACHO, Plaintiff and Appellant, *v.* COMPAÑÍA POPULAR DE TRANSPORTE, INC., Defendant and Appellee.

No. 9729. Argued January 10, 1949.—Decided March 25, 1949.

*Félix Ochoteco, Jr.* and *Luis E. Dubon* for appellant.   *R. Arjona Siaca, Artemio P. Rodríguez* and *Santos P. Amadeo* for appellee.

Mr. Justice Marrero delivered the opinion of the Court.

The defendant is engaged in the business of transportation of passengers, for pay, in ferry boats plying between San Juan and Cataño.   On August 22, 1942, at 9:45 A. M., defendant's boat No. 5 left Cataño for San Juan in one of its ordinary trips, and its covering was blown off by a gust of wind which threw into the sea the top cover of the upper deck, several lifesavers, and some of the benches which were commonly used by passengers.   The violence of the wind also threw into the bay, the minor Ángel David Camacho, who traveled as passenger and who, as a result of the accident, was drowned.   Concepción Camacho, as father of the child, brought an action to recover damages for the death of the latter and after a trial on the merits in which the parties introduced ample oral and documentary evidence, the lower court rendered judgment dismissing the complaint, with costs on the plaintiff.   In its statement of facts and opinion, the lower court found, among others, the following facts:

"That a short time after the boat left Cataño for San Juan a sudden whirlwind, waterspout, and heavy winds unfastened the covering of the boat and threw such covering into the water together with the child, who was drowned.

"That the captain or person in charge of the boat, could not find the child in the place where he had fallen into the water, in spite of the efforts he made therefor.

"That the accident where the minor Ángel David Camacho lost his life should be classified as an unfortunate accident, wherein there was no fault or negligence on the part of the defendant."

From said judgment the plaintiff has appealed and now contends that the lower court erred in holding that in the accident, wherein the minor Ángel David Camacho lost his life there was no fault or negligence on the part of the defendant; in rendering judgment dismissing the complaint and in not sustaining it, together with costs and attorney's fees.

The appellant jointly discusses the errors assigned by him and at the beginning of his brief he admits that the squall above mentioned, since it was an act of God or of nature, was beyond the control of the appellee, but contends, that notwithstanding this fact, there was fault and negligence on the part of the appellee in the death of the minor.

The errors assigned and the manner in which they are discussed compel us to make a brief summary of the evidence introduced by the parties. That for the plaintiff tended to show that at the specified date and hour the minor Ángel David Camacho, who was thirteen and odd years of age and was in the seventh grade in the elementary school, after paying his fare boarded defendant's boat No. 5 with the purpose of coming to San Juan to purchase a book which he needed for his studies; that he occupied a seat in the upper deck of the boat; that the day was cloudy, it drizzled, a heavy wind was blowing, and the sea was rough; that the boat's crew, notwithstanding the weather conditions, permitted the minor and other persons to sit on the upper part of the boat, without warning them of the risk they were taking upon so doing; that one or two minutes after the said boat had left Cataño for San Juan and at a distance of about 40 meters from the wharf to which the boat had been moored, there arose a squall which blew off the covering of the boat and threw into the sea the top cover of the upper deck, the box where the lifesavers were kept, the minor Ángel David Camacho and the bench which he occupied; that the wood to which the top cover was fastened was blackish and rotten; that the lifesavers fell at some distance from the minor and

although the latter knew how to swim he could not take hold of them; that the boat at no time attempted to rescue the child; that nobody tried to save him and that as a result thereof the minor was drowned.

The evidence for the defendant was to the effect that at the time the boat left towards San Juan, although it is true that it was drizzling, the wind was not heavy, the sea was not very rough, and the fact that the trip was dangerous could not be foreseen; that due to the drizzling the passengers were recommended not to sit in the upper part of the boat; that one or two minutes after the boat had been unmoored from the wharf and when it was at a short distance therefrom, unexpectedly and suddenly there arose a whirlwind or squall which blew off its covering; that immediately after the people screamed indicating that a child had fallen into the water, the boat returned to the place where they thought the child had fallen and searched him for several minutes, but in view of the fact that the passengers were alarmed and that they insisted that the boat return to the wharf, this was done; that then the passengers stepped out and boarded another boat, and that the boat immediately returned to the place where the child had fallen, without being able to find him.

Although the foregoing is a brief recital of the evidence introduced by the parties, it should be stated, however, that some of the witnesses of the plaintiff himself, repeatedly admitted that before the boat started the sea was not so rough; that there was a moderate breeze and that there was no danger in making the trip; that on other occasions in which there had been a heavy wind as on that day and the sea had been rougher, the boats had made the trip and that the boat attempted to reach the place where the child was. We deem it expedient to state that witness *William D. Pratts*, Lieutenant Commander of the Coastguard Service of the Navy, a witness for the defendant, textually testified as follows: "On that day I was on board a big merchant

ship. I could observe and carefully observed a phenomenon which we call in English a 'water spell'; it may be called in Spanish *'remolino'* (whirlwind) ; 'water spell' is a squall. The first indication that I could personally observe was when it arose over the 'Club Náutico' of San Juan . . . This water spell . . . occasioned . . . small damages, destroying the coverings of boats which were directly across the ship where I was . . . after it arose it suddenly descended and passed over Isla Grande Base and over the bay of San Juan. . . . it passed across the bay of San Juan and then began to subside"; . . . "the center of the whirlwind is very speedy but the progress over a determinate place is slow"; that "this happened in the morning" and ". . . we require from all big ships to have permanent coverings, and not only permanent, but that their fastenings and their equipment be of a solid construction. . . . On the other hand, we have required that these other boats, similar to those of the Compañía Popular, be constructed in such a manner that their coverings, in case of a sudden gust of wind or of a whirlwind, be blown off and carried away. That the construction of the roofing be fragile so that the wind may blow it off before the boat is sunk"; that boat No. 5 "complied with all the requirements of our rules in regard to that type of ships"; and that the squall at times moved upwards and descended to the sea and that it is very difficult to state for how long this phenomenon was seen, whether for seconds or minutes.

It should also be stated that *Edward Howard Marx*, Chief of the Weather Bureau of Puerto Rico, who also testified as witness for the defendant, testified that the average velocity of the wind during the day of the accident was of 12.8 miles per hour; that between 8:00 and 9:00 A. M. the velocity was of 20 miles per hour, but during five minutes starting at 8:40 A. M.[1] it reached 44.4 miles and for one minute it reached 49 miles per hour.

---

[1] At that time, in accordance with an administrative bulletin of the Governor of Puerto Rico, the clocks had been advanced an hour in the island.

The foregoing evidence jointly considered, was weighed by the lower court and as a result of such weighing, it reached the conclusion, as we have already stated, that it was an unfortunate accident.

An act of God or Vis Major is that which is occasioned exclusively by the violence of nature—by that kind of force of the elements which human ability could not have foreseen or prevented, such as lightning, a *tornado*, a sudden squall, a cyclone, or the like. *New Brunswick Steamboat & Canal Transp. Co.* v. *Tiers*, 24 N. J. Law 697, 714, 64 Am. Dec. 394; *The Majestic*, 17 S. Ct. 597, 602, 166 U. S. 375, 41 L. ed. 1039; *Davis* v. *Ivey*, 112 So. 264, 272; *Hays* v. *Kennedy*, 41 Pa. 378, 380, 80 Am. Dec. 627; *London Guarantee & Accident Co.* v. *Industrial Accident Commission of California*, 259 P. 1096; *Bradley* v. *City of Seattle*, 294 P. 554, 556; *Brousseau* v. *The Hudson*, 11 La. Ann. 427, 428; *The George Shiras*, 61 Fed. 300, 301, 9 C.C.A. 511.

The plaintiff admits, we repeat, that since said squall was an act of God, it was not within the power of the defendant to prevent it, but alleges that the death of the minor Ángel David Camacho was due to the fault and negligence of the appellee. The evidence was conflicting. The court decided the conflict and reached the conclusion that the appellee had not incurred in such fault or negligence. It has not been shown to us that in so doing it committed manifest error or acted under the influence of passion, prejudice, or partiality. *Asencio* v. *Am. Railroad Co.*, 66 P.R.R. 218; *Machuca* v. *Water Resources Authority*, 66 P.R.R. 174; and *Hernández* v. *Acosta*, 64 P.R.R. 166, 172.

Our Civil Code provides in its § 1058 (1930 ed.) that "No one shall be liable for events which could not be foreseen, or which having been foreseen were inevitable," and in § 1494 (1930 ed.) that "Carriers are also liable for the loss of and damage to the things which they receive, unless they prove that the loss or damage arose from a fortuitous event or *force majeure*." Therefore, our Civil Code acknowl-

edges that in those cases in which the losses or the damages have been occasioned by an inevitable accident, fortuitous event, or force majeure, the carrier is exempt from liability.

The textwriter Manresa, commenting on §§ 1105 and 1602 of the Spanish Civil Code, equivalent to §§ 1058 and 1494 of our code, expresses himself thus:

"The general and common meaning of *fortuitous event* includes the fortuitous event in itself and the vis major, the former as well as the latter may be ordinary or extraordinary. The difference between both events is simple: the *fortuitous event* as such, is not only above the obligor's control but also independent of all human action; the vis major arises from an inevitable accident, or from the lawful or unlawful action of a person other than the obligor, which action presupposes the impossibility on the latter's part to fulfill his obligation."

". . . . . . ."

"Transportation, legally considered, may be . . . of persons or of things, and it may be undertaken by water or land." Manresa, *Comentarios al Código Civil*, vol. VIII, 1929 ed., p. 85, and vol. X, 1931 ed., p. 693.

After defining the phrase *"fuerza mayor"* (vis major), in so far as the same is applicable to the civil law the *Enciclopedia Jurídica Española*, by Francisco Seix, states at vol. 16, p. 844, the following:

"Following the general rule of the schools of jurisprudence, the decisions of the Supreme Court have laid down, in the Spanish law, the requirements which should be present in vis major to give rise to the release of liability for the nonperformance of the obligations contracted, which are namely: (*a*) that the act, giving rise to the vis major, be unforeseen, and inevitable and not chargeable to the obligor, and (*b*) that said act be so intimately related to the obligation, that it actually prevents its performance; likewise establishing that, in order to be taken into consideration, its existence should be proved, and such proof should be substantiated by the person alleging it, and that the determination of whether a fact produces in law the effects of vis major, involves a legal decision belonging exclusively to the trial court."

682

If as the evidence showed, when the boat left Cataño a moderate wind was blowing, if the waves were not high, if on other occasions defendant's boats had made the same trip with the wind blowing as heavy as on that day and with higher waves; if the top covering of the boat was unfastened due to the sudden squall and to the fact that that kind of boats required that the construction of the top covering should be fragile; if the boat turned back to rescue the child; and if the principal cause of the accident was the squall described by Lieutenant Commander Pratts, the lower court was amply justified in reaching the conclusion it reached. Under those circumstances, it committed no error in rendering judgment in the manner it did.

The judgment appealed from must be affirmed.