Florence RENALDI, as Administratrix of the Estate of Edward Renaldi, deceased, Plaintiff-Appellee,

v.

The NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Defendant-Appellant.

No. 146, Docket 23663.

United States Court of Appeals Second Circuit.

Argued Dec. 13, 1955.

Decided March 6, 1956.

Edmund J. Moore, New York City (R. M. Peet, J. G. Pare, New York City, of counsel), for defendant-appellant.

O'Neill, Higgins & Latto, New York City (Thomas J. O'Neill, New York City, of counsel), for plaintiff-appellee.

Before CLARK, Chief Judge, and MEDINA and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

Plaintiff's decedent, Edward Renaldi, while in the employ of the defendant railroad, sustained injuries which resulted in his death. This action was brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover on behalf of his surviving parents for the pain and suffering of decedent prior to his death, and for the pecuniary loss resulting from his death. The case was tried before a jury, which returned a verdict for the plaintiff of $10,000 for pain and suffering, and $35,000 for pecuniary loss. Defendant appeals from the denial of its motions to dismiss the complaint, to direct a verdict, to set aside the verdict and order a new trial, and for judgment notwithstanding the verdict.

Renaldi performed maintenance work on defendant's anchor bridges, which are overhead steel structures carrying the high voltage electrical current which furnishes the motive power for defendant's trains. When injured, Renaldi was

painting the central portion of the bus supports or crosspieces of anchor bridge 193, which crosses the four tracks of defendant's Boston-New York line near Rye, New York. Other portions of the overhead structure had been painted on the two immediately prior work days, but Renaldi, who was then away on vacation, had not been present. On these earlier days eight more wires had been de-energized than on the day Renaldi sustained his fatal injuries.

Renaldi had arrived at anchor bridge 193 at about 8:30 A.M. with a gang of five other anchor bridge maintenance employees. It was a dark, cloudy morning, and the bridge was wet, or, at the very least, damp. After a number of the high voltage wires had been de-energized by means of phone calls to the load dispatcher, Renaldi began painting the first crosspiece. At this time he was standing on a ladder which had its base on the plank walk of the anchor bridge and rested against the crosspiece being painted. Renaldi had finished painting about three quarters of the central portion of this crosspiece when two flash explosions occurred. In some way Renaldi had come into contact with the live parts of two circuit breakers which were several feet beneath him and to his side. After coming into contact with the high voltage current, Renaldi fell about thirty feet to the ground. He suffered serious burns and multiple injuries from which he died three and one half days later.

The defendant contends that the trial judge should have directed a verdict for the defendant or granted its motion for judgment notwithstanding the verdict because of a failure of the plaintiff to prove negligence on the part of the defendant which caused the injury, or, in the alternative, that a new trial should have been granted because of errors in the admission of evidence and in the charge to the jury, and because of awards of damages that were unsupported by evidence and excessive. These alleged errors will be considered *seriatim.*

### 1. *Failure to Prove Negligence.*

If there is evidence from which reasonable men could conclude that Renaldi's injuries were caused wholly or partially by negligence on the part of the defendant, the verdict must be sustained. The standard of liability is negligence, and "the question is what a reasonable and prudent person would have done under the circumstances." Stone v. New York, C. & St. L. R. Co., 1953, 344 U.S. 407, 409, 73 S.Ct. 358, 359, 97 L.Ed. 441; Wilkerson v. McCarthy, 1949, 336 U.S. 53, 61, 69 S.Ct. 413, 93 L.Ed. 497. In this case there was evidence from which the jury could conclude that the weather was wet and stormy. Hamelin, Renaldi's foreman, had decided that the work should continue, and that only a portion of the wires needed to be de-energized. Under such circumstances, the jury reasonably could have concluded that the defendant had been negligent in failing to provide Renaldi with a safe place to work. Equally fair-minded men might come to a different conclusion,[1] but "[o]nly when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear." Lavender v. Kurn, 1946, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916.

1. If the jury had believed in its entirety the testimony of Hamelin, Renaldi's foreman, rather than that of plaintiff's witnesses, it could have reached the conclusion that Renaldi's injuries were due solely to his own negligence. Hamelin testified that Renaldi, in violation of his instructions, left his ladder and took a precarious position atop a panel box less than 24 inches from exposed live parts. When he saw Renaldi in this position, Hamelin testified, he warned him of the danger and told him not to stay there. Renaldi acknowledged the warning, Hamelin testified, but remained in his precarious position until coming into contact with the nearby current. Hamelin's testimony was contradicted in part and corroborated in part by the testimony of other members of the work gang, but the jury was not required to give it exclusive credence.

### 2. Alleged Errors in Admission of Evidence

█ The plaintiff was allowed, over ·continued objections of the defendant, to introduce a substantial amount of evidence concerning what was done at anchor bridge 193 on the two workdays immediately prior to that on which Renaldi was fatally injured. We think that the nature and extent of precautions taken on immediately prior workdays as to the same general work project had logical relevance and hence was admissible. Defendant argues that the area of work on the day of the accident was much more restricted and that under such circumstances the same precautions were not necessary. But this went to the weight of the evidence rather than its admissibility, and defendant was given complete opportunity to show that there was no need to shut down more wires on the day of the accident.

██ Defendant also objects to the admission in evidence of a safety rule of defendant forbidding work on anchor bridges during stormy weather. Such rules are admissible when their purpose is to protect the class of persons ·by whom suit is brought and when their violation can reasonably be said to contribute to the injury sued upon. Krasnow v. National Airlines, Inc., 2 Cir., 1955, 228 F.2d 326·; Dundom v. New York Cent. R. Co., 2 Cir., 1944, 145 F.2d 711. These prerequisites were satisfied in this .case. Defendant's further contention that no foundation had been laid for the admission of the safety rule is without merit, since Hefferman, the ambulance driver, had previously testified that the weather had been "stormy" and that it had been raining hard.

### 3. Alleged Errors in the Charge.

█ The defendant contends that the trial court should have given the jury a peremptory instruction that Renaldi had been contributorily negligent as a matter of law. However, under the circumstances, contributory negligence was a question for the jury.

█ Further, defendant requested charges to the effect that it could not be liable for injuries resulting from the carelessness of Renaldi alone, and that it had the right to assume that Renaldi would use reasonable care under the circumstances for his own safety. An examination of the charge has satisfied us that these matters were adequately covered in the charge as given. The trial judge need not charge in the language requested.

### 4. Damages.

█ With respect to pain and suffering the trial judge charged the jury as follows: "You have to determine upon a full consideration of the credible evidence what Renaldi's pain and suffering was during those three and a half days, and you have to express it in dollars and cents. * * * It is Renaldi's pain and suffering, not that of any relative, not that of his mother, not that of anyone else, *it is what Renaldi suffered,* and what you think that suffering should be represented by in dollars and cents in this lawsuit." Defendant complains because "pain and suffering" was not qualified by the word "conscious." It is true that there can be no recovery for pain and suffering where the injured person is killed instantaneously. Great Northern R. Co. v. Capital Trust Co., 1916, 242 U.S. 144, 37 S.Ct. 41, 61 L.Ed. 208; St. Louis, I. M. & S. R. Co. v. Craft, 1915, 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160, or where the injured person never regains consiousness. New Orleans & N. E. R. Co. v. Harris, 1918, 247 U.S. 367, 38 S.Ct. 535, 62 L.Ed. 1167. We think, however, that the charge of the trial judge was phrased in terms connoting experiential reality, and that the jury hearing it would consider only that pain actually experienced by the deceased. During the three and one-half days following the accident that Renaldi remained alive, he was conscious a substantial portion of

the time. There was ample evidence justifying an award of $10,000 for pain and suffering.

The defendant also contends that the trial judge erroneously referred to the life expectancies of the parents at the time of the trial as well as their expectancies at the time of Renaldi's death. It is true that rights under the FELA accrue at the time of the employee's death, Chicago, B. & Q. R. Co. v. Wells-Dickey Trust Co., 1927, 275 U.S. 161, 48 S.Ct. 73, 72 L.Ed. 216, but we do not think the trial judge's passing reference to the life expectancy of the parents at the time of trial constituted prejudicial error. Mortality tables are not inflexible rules which the jury must follow, but are guides to assist them in awarding realistic and reasonable damages. Thompson v. Camp, 6 Cir., 1947, 163 F.2d 396, certiorari denied 333 U.S. 831, 68 S.Ct. 458, 459, 92 L.Ed. 1116; Holliday v. Pacific Atlantic S. S. Co., D.C.D.Del.1953, 117 F.Supp. 729, affirmed, 3 Cir., 1954, 212 F.2d 206. Florence Renaldi appeared in court, testified as a witness, and was observed by the jury. The jury was entitled to take the benefit of their observation of her into the jury room with them as bearing on the condition of her health and the likely period of pecuniary loss. The life expectancy of the parents at the time of trial might have aided them in assessing realistic damages.

Finally, defendant contends that the awards of damages to the parents for pecuniary loss were unwarranted as to the father, Secundo Renaldi, and excessive as to the mother, Florence Renaldi. The jury awarded Secundo $5,000 and Florence $30,000 for pecuniary loss. We do not think these awards unwarranted or excessive. Although Secundo was separated from Florence, and there was no evidence that the decedent had made financial contributions to Secundo, there was credible testimony from which the jury might well have concluded that Secundo had received direct benefit from contributions made to Florence, and that the decedent would continue to have similar consideration for Secundo in the future. The $30,000 award for pecuni-

ary loss to Florence was certainly ample, considering her advanced years, but we cannot say that the trial court abused its discretion in permitting it to stand. There was evidence that her son contributed $25 per week to her support, gave her numerous gifts and paid many bills. The jury could have concluded that she was in good health and hence that she would outlive the life expectancy for persons of her age; and they could have based their award on other factors, such as the prospect that the son would make increased contributions in the future from larger earnings and the decreased purchasing power of the dollar. We note that the argument as to excessiveness is parallel to that successfully advanced before the Fourth Circuit in Southern Railway Co. v. Neese, 4 Cir., 1954, 216 F.2d 772, 774-776, and that that Court's conclusion of excessiveness was recently reversed by the Supreme Court, which said ". . . as we view the evidence we think that the action of the trial court was not without support in the record, and accordingly that its action should not have been disturbed by the Court of Appeals." Neese v. Southern Ry. Co., 350 U.S. 77, 76 S.Ct. 131, 132.

Affirmed.