**The CHESAPEAKE AND OHIO RAILWAY COMPANY, a Corporation, Appellant,**

v.

**G. C. BILITER, Administrator of the Estate of Hogan Biliter, Deceased, Appellee.**

Court of Appeals of Kentucky.

Feb. 3, 1967.

Rehearing Denied May 12, 1967.

Porter M. Gray, John M. Williams, Gray, Woods & Cooper, Ashland, Donald Combs, Stephens & Combs, Pikeville, for appellant.

F. Dale Burke and Francis M. Burke, Pikeville, for appellee.

CULLEN, Commissioner.

Hogan Biliter, while engaged in the performance of his duties as a fireman for the Chesapeake & Ohio Railway Company, was killed in a wreck which resulted from subsidence of the roadbed under a stretch of track in the mountains of Pike County. He left surviving him his father and mother, who claimed dependency. On their behalf the instant action was brought by the father as administrator, under the Federal Employers' Liability Act, U.S.C.A., Title 45, Section 56, to recover damages for loss of the pecuniary benefits which they reasonably could have expected to have received from their son. The case was tried by the court without a jury and resulted in a judgment for the parents in the amount of $18,600. The railroad has appealed, contending (1) culpable negligence on the part of the railroad was not established, either by direct proof or by permissible inference; (2) safety rules of the railroad erroneously were admitted in evidence; and (3) the damages are excessive. We shall consider these contentions in the order above stated.

The wreck occurred at 11:15 p. m. on March 11, 1963. There was a downpouring rain at the time and there had been heavy rainfall for a period of five days or more. The railroad tracks in the area where the wreck occurred ran along the toe of a mountain just above a river. The river had been rising during the period of the rains and had passed flood stage at the time of the accident, but had not yet crested.

The waters flowed along and against the railroad fill. As the freight train on which Biliter was employed, consisting of two engines and 95 cars, was proceeding along the tracks in this area, at a speed of around 32 miles per hour, with the rain (in the engineer's words) "coming down in sheets," it came to a place where the fill was completely gone from under the tracks for a distance of 150 to 200 feet. The two engines and a large number of cars toppled into the river, causing Biliter's death.

In finding the railroad liable the trial court held not only that negligence was inferable under the res ipsa loquitur doctrine, but that there was specific evidence of negligence in failure to make a close inspection of the roadbed, which inspection was required by the company's own safety rules and could reasonably be considered to have been required by common law standards.

Considering that railroad trains ordinarily do not fall into rivers in the absence of negligence, we think this was an appropriate case for application of res ipsa loquitur. See Louisville & N. R. Co. v. Allen's Adm'r, 174 Ky. 736, 192 S.W. 863; Propper v. Chicago, Rock Island and P. R. Co., 237 Minn. 386, 54 N.W.2d 840; Annotation, 35 A.L.R.2d 475; Vernon v. Gentry, Ky., 334 S.W.2d 266, 79 A.L.R.2d 1. It may be conceded that the railroad showed conclusively that its roadbed was so constructed and maintained as to withstand normal attacks by the forces of nature, and therefore it overcame any inference of negligence as to *construction*. However, this did not overcome permissible inferences of negligence in other respects, such as the failure to take precautions against damage to the roadbed that might reasonably have been expected to result from an extended period of abnormally heavy rainfall. The railroad did not show conclusively that it could not have been negligent in continuing to operate heavy trains over its tracks in a flooded area without close inspection for possible washouts. See Vernon v. Gentry,

Ky., 334 S.W.2d 266, 79 A.L.R.2d 1; Lee v. Tucker, Ky., 365 S.W.2d 849, and Bell & Koch, Inc. v. Stanley, Ky., 375 S.W.2d 696, as to what is required to overcome res ipsa loquitur.

Even if res ipsa were considered not applicable, we agree with the trial court that under the conditions of extraordinary rainfall that had prevailed for more than five days, reasonable minds might conclude that ordinary care would require that a close inspection of the roadbed be made before each trip of a train through the flooded area. Admittedly, the appellant railroad had not made a close inspection of the tracks since the first day of the heavy rains, five days before the accident. The railroad argues that the normal observations made by the operating crews of the numerous freight trains that had traversed the tracks (six trains in the seven-hour period immediately preceding the accident and six more in the previous 17 hours) constituted an adequate inspection; that these observations disclosed no "soft spots or bumps" which normally would have shown up if subsidence were commencing. It is our opinion that reasonable minds could conclude that as the rains continued to fall with increased intensity, the river continued to rise, and the railroad continued to operate heavy freight trains over the tracks, ordinary care would require more minute and close inspection of the roadbed. The heavy traffic might well have contributed to a subsidence in these conditions.

■ This brings us to the question of the admissibility and effect of the safety rules of the railroad, the pertinent parts of which were:

"During heavy storms or abnormal weather conditions, whether by day or night * * *

"The Foreman must detail to each trackman a definite portion of the road to patrol, so that his entire section will be protected, the foreman proceeding to that portion of his section most liable to damage.

"Foremen must see * * * that each trackman carefully patrols the portion of road assigned to him, inspecting the track, bridges, culverts, embankments, slopes of cuts * * *. Sharp lookout must be kept for evidence of washing out of the ballast and roadbed under the tracks, * * * the cutting into and sloughing off of embankments, the sliding in of earth and rock from slopes * * *".

Admittedly the railroad did not comply with this rule. The railroad suggests that it was a matter of judgment whether the storm was "heavy" or the weather conditions "abnormal," but we think the conditions obviously and unquestionably fell within these definitions.

■ In arguing that the rules should not have been admitted in evidence the railroad cites Current v. Columbia Gas of Kentucky, Ky., 383 S.W.2d 139, which dealt with admissibility of an employer's safety rules in an action by an injured *stranger*. Here the action arises out of injury to and death of an *employe*. Clearly, in such an action, the rules of the employer are admissible, and constitute a standard of care. 56 C.J.S. Master and Servant § 272, p. 1037; 57 C.J.S. Master and Servant § 513, p. 100; Renaldi v. New York, N. H. & H. R. Co., 2 Cir., 230 F.2d 841, 59 A.L.R.2d 1371. (It is conceivable that rules of the kind here involved would have been admissible even in an action by a nonemploye, under our Current case, as dealing with activities not within the general realm of common experience.) We think the rules properly were admitted in evidence and that the evidence of their violation warranted a finding of negligence of the railroad.

It is argued by the railroad that *negligence* alone, in regard to inspection, is not enough to impose liability; there must be proof of *proximate cause*; and here there was no such proof because there was nothing to show that a careful, minute inspec-

tion would have disclosed that a washout was imminent. It is argued that an inspection two hours before the time of the accident would have met all requirements of care and there is no evidence that an inspection at that time would have disclosed the danger.

■ If this case be rested on res ipsa loquitur (as properly it may be) there is a built-in inference of proximate cause, because the very application of the doctrine is predicated on the inference that the accident was *caused* by negligence. In Propper v. Chicago, Rock Island & P. R. Co., 237 Minn. 386, 54 N.W.2d 840, where the facts were very similar to those here, and the res ipsa loquitur doctrine was applied, the court held that there was an inference that a proper inspection would have disclosed the dangerous condition of the roadbed.

Aside from res ipsa, we think it is most reasonably inferable that had the railroad complied with its own rule, and stationed trackmen at intervals along the track to carry on a continuous patrol of inspection, the subsidence would have been discovered in time to avert the accident.

■ Even if both res ipsa and the rules of the company be put aside, we think the railroad cannot fairly be heard to argue that it should not be liable for a total failure of inspection because *maybe* an inspection would not have been effective.

■ The railroad suggests that the accident was an "Act of God". In view of the fact that the washout here involved did not occur in the course of a sudden cloudburst or flash flood, but rather after an extended period of heavy rainfall, so that the railroad had reason to anticipate subsidence and had time to take precautionary measures, we think the defense of "Act of God" properly was rejected by the lower court. In an appropriate annotation on this subject in 62 A.L.R.2d 796, it is pointed out that ordinarily the action of natural forces, in order to be classed as an "Act of

God," must be of an unforeseeable and unpredictable character, the consequences of which could not be guarded against. In the annotation several cases from other jurisdictions are cited in which it was held that failure of a railroad to take proper safety measures during an extended period of heavy rains may warrant rejection of the "Act of God" defense. We agree with them.

■ Our conclusion is, then, that the railroad properly was held liable. However, it is our opinion that the damages are excessive.

■ This being an action under the Federal Employers' Liability Act, the measure of damages is the commuted present value of the amount of pecuniary benefits which the dependents of the deceased employe had a reasonable expectation of receiving from him had he not been killed. Louisville & N. R. Co. v. Young's Adm'x, Ky., 253 S.W.2d 585. In the instant case the mother's life expectancy was 15.72 years, and the father's was 10.92 years. The award of $18,600 represented the commuted present value of contributions to the mother of approximately $110 per month, and to the father of approximately $34 per month, during their respective life expectancies.

The parents testified that the house in which they lived with their son, Hogan, was his house; he paid all of the household expenses and bought all the food; and he gave them around $100 per month for these purposes over and above the amount paid by him for utility services. However, uncontradicted evidence as to his earnings showed that during the fifteen years of his employment by the railroad (he was 44 years old when he died) his highest gross pay for any year was around $3,000, and for most of the years was considerably less; and that for several years his outlay for automobile purchases and operation was in excess of $100 per month. We think the evidence does not warrant a finding of reasonably expectable pecuniary benefits in

excess of $100 per month for the parents, although we think these benefits might reasonably be expected to continue unreduced for the surviving parent after the death of one of them.

The parents argue that the house occupancy furnished to them by their son had a pecuniary value of around $100 per month. While they testified that the house belonged to the son the evidence strongly indicates that they paid for it, and at the very least they had life estates in it. Regardless of this, they were not *deprived* of this benefit by the son's death because they inherited the house from him.

A contribution of $100 per month during the longest period of expectancy (that of the mother)—15.72 years—would commute at four percent to approximately $13,750. In our opinion an award in excess of that sum must be considered excessive.

The judgment is affirmed as to liability but reversed as to damages, with instruction to reassess the damages.