**LAND DEVELOPMENT, INC., and William D. Mattingly, Appellants,**

**v.**

**LOUISVILLE GAS AND ELECTRIC COMPANY, Louisville and Jefferson County Metropolitan Sewer District, et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 30, 1970.

Henry D. Hopson, Hamilton, Hopson & Hamilton, Louisville, for appellants.

Charles E. Gaines, O. Grant Bruton, Edith Stanley, Louisville, for appellees.

OSBORNE, Judge.

This is an action by the Louisville Gas & Electric Company, referred to in the record as L. G. & E., and Jefferson County against Land Development, Inc., a corporation consisting primarily of William D. Mattingly, seeking damages from Mattingly contending that he created an artificial condition on his property which backed up a stream damaging their property. The trial court in a lengthy finding of fact and conclusion of law found for the appellee, L. G. & E., in the amount of $8641.49 and for Jefferson County in the amount of $2374.69. We affirm the judgment.

Klempner Supply Company and Metropolitan Sewer District, who were brought into the action by a cross complaint, were later dismissed from the suit and we believe properly so. Therefore, these two parties will not be mentioned in the balance of this opinion.

Land Development, Inc., owned a tract of land near Hubbards Lane in Louisville, Kentucky, through which flowed the north branch of Beargrass Creek. Upstream from the landowner was property owned by Jefferson County and L. G. & E.'s quarry substation. Land Development wished to cover its property with fill in order to prepare a site for a shopping center. In order to provide for the continuing flow of the creek, a large pipeline was placed across the property made up of sections of tank cars. It was the intent and purpose that the water would flow through this pipeline underneath the property as it had flowed in the creek. Over this pipe, Land Development proceeded to place fill. This fill consisted of much waste matter, including stumps, boxes and scrap of all kinds. The pipe was not run into a junction box on either end but was left open. About March 9, 1964, there came extremely heavy rains. The debris which was passing for fill washed into the head end of the pipe, stopping it up, and thereby backing water up on Jefferson County's and L. G. & E.'s property. A substation was caused to short out on L. G. & E.'s property, which constituted the majority portion of their damage.

This is a voluminous record and many arguments are presented. We have examined the testimony and read with care the findings of fact and conclusions of the trial court. We believe that each and every finding made by the chancellor is amply justified from the evidence.

Appellants basically complain of two of the findings of the chancellor. First, that the obstruction in the sewer caused the flooding and, second, his finding that the heavy rains on March 9 cannot be classified as an "Act of God" so as to exonerate appellant from liability. We will not attempt to detail the testimony relative to the obstruction in the pipe; suffice it to say that the testimony given by lay witnesses, experts and county officials all corroborates the fact that the sewer was stopped up and that great effort was made to free it so that the water would pass through.

The portion of the chancellor's findings which we believe conclusively disposes of the issues between the parties reads as follows:

"There was, as a matter of fact, two periods of unusual heavy rainfall, one on March 4, 1964, and the other on March 9, 1964. The latter followed so closely to the former that the earth had not time to dry out but was still thoroughly water soaked when the second rains came.

"A prudent real estate developer may have attempted to utilize the subject property for the same use as intended by Mattingly and Land Company. However, the evidence discloses that the manner in which they undertook to effect this use was not, as far as L. G. & E., the County and M. S. D. are concerned, in a reasonable or in a prudent manner. Mattingly and Land Company applied to the public authority, M. S. D., for guidance in this venture. The evidence discloses that these suggestions were not

followed and neither end of the conduit was tied into the highway culvert. The root of this dilemma is found in the failure to tie the conduit into the junction boxes so as to make a continuous enclosed channel for the flowage of surface water from Hubbards Lane to Brownsboro Road. The subject property was filled with tree stumps, logs, brush, plaster board, bricks, old doors, lumber, tree limbs, cardboard and other refuse, which gathered together and blocked the drainage pipe. There was a great deal of evidence introduced concerning the elevation of the water at various times, the amount of rainfall that was encountered, the cause of the breaking of the debris and flowage of water into a different channel, the efforts of various persons in attempting to facilitate a rapid flow off of this property, but all of these matters are secondary to the actual cause. The cause in the first place was failure of Mattingly to properly care for the subject property and the manner in which he had permitted it to deteriorate at the time of the flooding.

"In view of the foregoing, the Court is of the opinion that Mattingly knowingly created an obstruction and knowingly permitted an obstruction to exist which actually caused the flooding and the resulting damage.

"Although there was an unusual heavy rain on these two occasions, the evidence does not convince the Court that a reasonable, prudent person would not and could not have guarded against such an occurrence by merely completing the project as it was proposed to be done and not leaving the job in an unfinished condition. There is no evidence showing that L. G. & E. did anything that would justify charging it with contributory negligence nor is there any evidence to justify the charge that L. G. & E. could have done anything more than it did do in protecting its property.

" * * * The evidence further discloses that Land Company and Mattingly have not convincingly established the 'Act of God' defense. In the case of Chesapeake and Ohio Railway Company v. Biliter, Ky., 413 S.W.2d 894, the Court of Appeals of Kentucky in considering the propriety of the defense of 'Act of God,' quoted from 62 A.L.R.2d 796, as follows:

" ' * * * "Act of God," must be of an unforeseeable and unpredictable character, the consequences of which could not be guarded against. * * *'

"It is evident from the findings of the Court, therefore, that the consequences of the acts of Mattingly and Land Company could have and should have been guarded against by the proper construction of the culvert."

The chancellor made an exhaustive analysis of the law with which we are not inclined to differ as we believe it to represent the position taken by this court in Klutey v. Commonwealth of Kentucky, Ky., 428 S.W.2d 766, to the effect that the court should consider all relevant factors in cases of this nature in making a determination as to whether the use made of the property is reasonable under the circumstances. The chancellor found that the use made of this land under the circumstances was unreasonable and that the unreasonable use of the land caused appellees' property to be flooded. With these findings, we concur.

■ Appellees herein applied to the circuit court for injunctive relief prohibiting appellant from maintaining the premises in their present condition. The relief was denied by the trial court and from this order they filed a cross appeal. We believe the injunction was properly denied. The proof does not clearly demonstrate that there is a strong existing likelihood that flooding will reoccur in view of the fact that much of the fill is washed away.

Affirmed on direct appeal. Affirmed on cross appeal.

All concur.