508 P.2d 347

SOUTHERN PACIFIC COMPANY, a corporation, Appellant,

v.

Lou LODEN, Appellee.

No. 2 CA–CIV 1297.

Court of Appeals of Arizona, Division 2.

April 5, 1973.

Evans, Kitchell & Jenckes, P. C., by Ralph J. Lester, Phoenix, for appellant.

E. Leigh Larson, Nogales, for appellee.

HOWARD, Judge.

Plaintiff-appellee brought a breach of contract action to recover damages in the sum of $10,047.68 resulting from the defendant carrier's failure to deliver certain perishable produce shipped from Nogales, Arizona to Los Angeles, California within the ordinary and usual time.

.Southern Pacific Company admitted that appellee's shipment was delayed and not delivered to its destination within the usual time, but alleged that the delay was caused by an act of God and was unavoidable due to unusually heavy rains and flood conditions causing damage to its track and rail facilities. Defendant denied that plaintiff's produce suffered damage as a result of the delay and alleged that the poor condition of the produce was the result of defects in the produce not attributable to the delay in shipment.

The pretrial order formulated the issue as being "whether or not the Defendant is liable for damages for failure to deliver perishable produce within a reasonable period of time. It is the Defendant's position that the delay was caused by an act of God; . . ."

At the conclusion of the case, tried to the court without a jury, the trial judge stated:

". . . it seems to me the issue resolves itself pretty much to the question of the defensive Act of God, . . ." When counsel for Southern Pacific was asked whether he was contending any matter other than the act of God defense, he responded, "No."

On June 12, 1972, the court entered judgment in favor of the plaintiff in the sum of $10,047.68, and Southern Pacific appeals from this judgment.

Appellee Lou Loden is a produce buying broker whose business is located in Nogales, Arizona. The business entails the inspection and buying of produce for various customers throughout the United States and deals in such produce as tomatoes, cucumbers, bell peppers and various other vegetables.

On January 24, 1969, at about 1:30 or 2:00 p. m. the produce in question arrived from Culiacan, Mexico, and at about 10:30 p. m., Southern Pacific received from appellee at Nogales, Arizona, two refrigerated vans, each containing 725 crates of cucumbers for transportation and delivery to two of appellee's consignees in Los Angeles under the carrier's bill of lading which constitutes the contract of shipment and

prescribes the carrier's duties. The pertinent provisions read as follows:

"Sec. 1.(a) The carrier . . . in possession of any of the property herein described shall be liable as at common law for any loss thereof or damages thereto, except . . .

(b) No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, . . .

\* \* \* \* \* \*

Sec. 2.(a) No carrier is bound to transport said property by any particular train or vessel, or in time for any particular market or otherwise than with reasonable dispatch.

\* \* \* \* \* \*"

The refrigerated vans were placed "piggyback" upon a railroad flatcar. The shipment departed from Nogales at 4:15 a. m. on January 25, 1969, and should have arrived in Los Angeles the evening of January 25th, but did not arrive in Los Angeles until 6:40 a. m. January 29, 1969. Southern Pacific's train was detained at Yuma, Arizona from 8:55 p. m. January 25th until 5:30 p. m. January 28th, at which time it recommenced its journey to Los Angeles.

Consignee Cal Fruit was notified of the arrival of the cucumbers at 7:30 a. m. on January 30, 1969, and its van was delivered on that same date. Consignee Tokay Produce was notified of the arrival of the cucumbers on February 3, 1969, and one piggy van was delivered to it on February 5, 1969.

The delay in the delivery of the cucumbers resulted in their spoilage, and Loden sustained damages in the sum of $10,047.-68. The delay was caused under the following circumstances:

It had been raining in the Los Angeles area for about a week prior to January 25, 1969. On the morning of Saturday, January 25th, Milford Smith, Assistant Bridge and Building Supervisor for Southern Pacific, was dispatched from Los Angeles to inspect track structures on the railroad line

from Los Angeles to Yuma, Arizona. At Ontario, California, east of Los Angeles, he encountered water flowing under one track structure causing a scour (the washing away of dirt from behind the wingwalls or abutment of the structure). He fortified the structure with burlap sacks and reported the condition by telephone for repair.

Mr. Smith continued his inspection eastward, and at Whitewater, California he encountered water which had overflowed its channel and was running over the tracks. This was reported on the evening of January 25, 1969. Smith received orders to proceed to Thermal, California where on arrival he discovered that both railroad bridges had fallen into the channel and were in the water. He returned to Indio to report the condition and made arrangements for a repair crew and materials to be brought in. On Sunday, January 26th, pile-driving operations commenced. The tracks were joined on Tuesday, January 28th and at 5:30 p. m. the train on which Loden's cucumbers were loaded departed from Yuma, arriving at Los Angeles at 6:40 a. m. January 29, 1969.

Common carriers impliedly agree to carry safely, and at common law they are held to a very strict accountability for the loss or damage of goods received by them. 13 C.J.S. Carriers § 71 (1939). In this state a common carrier's liability for damage to goods in transit is based on the substantive rule of law that the carrier is an insurer for the safe transportation of goods entrusted to its care, unless the loss is caused by an act of God, the public enemy, negligence of the shipper, or the inherent nature of the goods themselves. Southern Pacific Company v. Itule, 51 Ariz. 25, 74 P.2d 38 (1937); Orcutt v. Tucson Warehouse & Transfer Company, 83 Ariz. 200, 318 P.2d 671 (1957).

Furthermore, common carriers undertaking to carry perishable goods are held to a higher degree of care than when engaged in the shipment of other articles not inherently perishable and a failure to

comply with this duty which results in a loss or injury to the shipper renders the carrier liable for the loss sustained, unless a proper defense is alleged and proved. 13 Am.Jur.2d Carriers § 342 (1964).

■ In addition, common carriers undertaking to transport property must, in the absence of an express contract providing for the time of delivery, carry and deliver within a reasonable time. The carrier is required to exercise due diligence to transport and deliver the property and guard against delay. 13 Am.Jur.2d Carriers § 364 (1964). Mere delay in transportation does not create a liability to respond in damages, and the rule is that the carrier is bound to use reasonable diligence and care, and only negligence will render it liable. 13 C.J.S. Carriers § 191 (1939).

■ ■ The law recognizes various fact situations as an excuse for delay which constitutes a good defense. Examples of such facts are accidents or misfortunes without fault or negligence on the carrier's part, or, an act of God; an act or fault of the shipper or consignee; the press of business; strikes; extreme weather conditions; and accidents not amounting to acts of God. The delay, however, must have been due to an occurrence as could not have been anticipated in the exercise by the carrier of reasonable prudence, diligence and care. 13 C.J.S. Carriers §§ 197–206 (1939); 13 Am.Jur.2d Carriers §§ 371–376 (1964).

In the case at bar, appellant at all times prior to judgment and appeal alleged an Act of God as justification for the delay in transportation and consequent spoilage of appellee's perishable produce. Southern Pacific has attempted on appeal to assert the defense of extreme weather conditions as an excuse for delay in delivery, contending that it makes no difference whether the delay "was caused by extreme weather conditions or by an act of God"; that "the distinction, if any, simply occurs in the case law"; and that to not allow it to assert unusual weather conditions as an affirmative defense amounts to a "hyper-technicality."

■ We, of course cannot agree with this position for both procedural and substantive reasons. Rule 8(d), Ariz.R.Civ.P., 16 A.R.S., requires that any matter constituting an avoidance or affirmative defense be plead. Failure to plead an affirmative defense results in the waiver of that defense and is excluded as an issue in the case. City of Phoenix v. Linsenmeyer, 86 Ariz. 328, 346 P.2d 140 (1959).

■ In addition, the purpose of the pretrial conference and subsequent pretrial order of the court is to simplify the issues after the parties have completed discovery. Loya v. Fong, 1 Ariz.App. 482, 404 P.2d 826 (1965); Calderon v. Calderon, 9 Ariz. App. 538, 454 P.2d 586 (1969). After a pretrial order is issued, it controls the subsequent course of the litigation, unless modified at trial. The issues are limited by the pretrial order. Loya v. Fong, supra.

■ Since questions of pleading in actions for unreasonable delay by a carrier of goods are governed by the rules which are applied in other cases generally, excuses for delay are matters of defense and the carrier must specially plead the circumstances which excuse the delay in transportation or delivery. 13 Am.Jur.2d Carriers § 388 (1964).

■ In the instant case the only defense asserted by Southern Pacific was an act of God. A case may not be tried on one theory of law in the trial court and upon another theory on appeal. County of Cochise v. Beckman, 11 Ariz.App. 19, 461 P.2d 498 (1970).

The question on appeal therefore resolves itself to whether or not appellant sufficiently met its burden of proving that an act of God occurred excusing its delay in transportation and delivery of appellee's goods.

■ The various definitions of an act of God practically all require the entire ex-

clusion of human agency from the cause of the loss or injury. A casualty cannot be considered an act of God if it results from or is contributed to by human agency, and that which may be prevented by the exercise of reasonable diligence is not an act of God. Bradley v. City of Seattle, 160 Wash. 100, 294 P. 554 (1930); 1 Am.Jur. 2d Act of God § 2 (1962).

 The only acts of God that excuse common carriers from liability for loss or injury to goods in transit are those operations of the forces of nature that could not have been anticipated and provided against and that by their superhuman force unexpectedly injure or destroy goods in the custody or control of the carrier. Seaboard Air Line Ry. v. Mullin, 70 Fla. 450, 70 So. 467 (1915); 1 Am.Jur.2d Act of God § 3 (1962).

 Extreme weather conditions which operate to foil human obligations of duty are regarded as acts of God. However, every strong wind, snowstorm, or rainstorm cannot be termed an act of God merely because it is of unusual or more than average intensity. 1 Am.Jur.2d Act of God § 5 (1962). Ordinary, expectable, and gradual weather conditions are not regarded as acts of God even though they may have produced a disaster, because man had the opportunity to control their effects. Annot. 62 A.L.R.2d 796, 797 (1958); Chesapeake and Ohio Railway Company v. Biliter, 413 S.W.2d 894 (Ky. 1967).

 On appeal the court of appeals is mandated to look at the facts in the most favorable light to support the judgment reached in the trial court. Galbraith v. Coury Bros. Ranches, Inc., 9 Ariz.App. 137, 449 P.2d 974 (1969), and where there is reasonable evidence to support the trial court's judgment, an appellate court will not overturn it. Jerger v. Rubin, 106 Ariz. 114, 471 P.2d 726 (1970).

Application of the above principles to the evidence presented at trial leads to the conclusion that Southern Pacific failed to prove its defense of an act of God. Two of appellant's employees testified that it had rained in the Los Angeles area for a week prior to January 25, 1969, and it was not until a week after the rain began that Southern Pacific dispatched its employee Smith to patrol the track between Los Angeles and Yuma. Appellant offered knowledge and evidence of a week-long rain but offered no evidence of precautions to avoid possible consequences of this rainfall. Southern Pacific, through the testimony of its own witnesses, demonstrated notice of a gradual weather condition which could foreseeably cause damage to its facilities and consequent delay in transportation.

One of appellant's employees testified that he had not experienced the "conditions" on the line between Yuma and Los Angeles in his 29 years with the railroad. The appellant, however, offered no weather records in evidence to indicate how much rain fell during the period in question or the amount of water runoff at the bridge at Thermal or elsewhere, nor any comparison of the purported rainfall with that which had occurred previously. Appellant did not meet its burden to establish that the rainfall in the instant case was of unusual or more than average intensity.

 In order to defend on the ground that a loss or damage complained of was caused by an act of God, the act must have been the proximate cause of the damage, whether the complaint is for a breach of contract or for a tortious injury. Porter Screen Mfg. Co. v. Central Vermont Ry. Co., 92 Vt. 1, 102 A. 44 (1917); 1 Am. Jur.2d Act of God § 15 (1962).

Appellant did not offer any evidence of the condition of the bridge at Thermal on or before January 25, 1969. There was no evidence offered of the maintenance or inspection records of the bridge and track on January 25th or at any time prior thereto, and no evidence was presented that it was the weather conditions in question which in fact washed the bridge out. In

short, there was no evidence shown of a causal connection between the rainfall and the destruction of the bridge.

A rainstorm of unusual duration or intensity is not necessarily a superhuman cause or an act of God. Southern Pac. Co. v. City of Los Angeles, 5 Cal.2d 545, 55 P.2d 847 (1936). The rainfall in the instant case was not shown to be totally unforeseeable or of greater intensity than other rainfalls in the region so as to justify being called an "act of God" and, therefore, the judgment of the trial court is affirmed.

KRUCKER, J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: Judge JAMES D. HATHAWAY having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.