816 P.2d 255

**FRATERNAL ORDER OF EAGLES, INC., TUCSON AERIE # 180, a private non-profit corporation, Plaintiff/Appellant,**

v.

**The CITY OF TUCSON, a political subdivision of the State of Arizona, Defendant/Appellee.**

**No. 2 CA–CV 90–0237.**

Court of Appeals of Arizona, Division 2, Department B.

March 29, 1991.

Review Denied Sept. 12, 1991.*

* A Judge of the Pima County Superior Court authorized and assigned to sit as a Judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed July 25, 1990.

* Moeller, J., of the Supreme Court, voted to consider Issue No. 2.

Monroe & Egbert, P.C. by Michael J. Monroe, Tucson, for plaintiff/appellant.

Frederick S. Dean, Tucson City Atty. by William F. Mills, Tucson, for defendant/appellee.

## OPINION

FERNANDEZ, Chief Judge.

The Fraternal Order of Eagles, Inc., Tucson Aerie # 180 (F.O.E.) appeals from the trial court's affirmance of the City of Tucson administrative hearing officer's ruling that the F.O.E. is required to admit four women to membership and is subject to a $1,000 fine for violating a city ordinance against discrimination. We agree that the F.O.E. is subject to the ordinance and affirm.

The F.O.E. began in the State of Washington in the 1890's and the Tucson unit or aerie began in 1901. It describes itself as a fraternal organization. Its articles of incorporation state that its purpose is "to unite fraternally for mutual benefit, protection, improvement, social enjoyment and association." At the administrative hearing held in June 1989, the testimony was that the F.O.E. raises money that it gives to various charities. In June 1989, the membership of the aerie was about 900; the women's auxiliary had just under 1,100 members. Only males are permitted to join the aerie; only females can become members of the auxiliary. Members of both groups must be over 21, believe in a supreme being, not be a member of the Communist party, and be of good moral character. An applicant for membership must be sponsored by two members; be interviewed by a committee, which recommends the applicant's approval or rejection; and be approved by two-thirds of the members present and voting. The testimony was that it is rare for an applicant to be rejected.

Between July and October 1988, four women applied for membership in the aerie. The committee recommended that their applications be rejected, and all four were rejected by the membership. The four women then filed a complaint with the City of Tucson, claiming the F.O.E. had discriminated against them in violation of Tucson City Code § 17–12(a). The administrative hearing officer concluded that the F.O.E. had violated the ordinance, and the F.O.E. filed a special action in superior court for review of that decision. After lengthy arguments and a motion for new trial by the F.O.E., the trial court affirmed the decision of the administrative hearing officer, and this appeal followed. The F.O.E. does not dispute the fact that the women were rejected for membership because of their gender.

The F.O.E. argues on appeal that 1) the organization is not a place of public accommodation either under the ordinance or under criteria established by the United States Supreme Court, 2) even if it is a public accommodation, it is exempt under one of the exclusions of the ordinance, 3) the language of the ordinance is unconstitutionally vague, 4) the trial court's interpretation of the ordinance violates the F.O.E.'s equal protection rights, 5) the language of the ordinance is unconstitutionally overbroad, and 6) enforcement of the ordinance against the F.O.E. would violate its members' rights to freedom of association. We do not address the void for vagueness argument because the F.O.E. expressly argued below that the ordinance language is not unconstitutionally vague. *See Southern Pacific Co. v. Loden,* 19 Ariz.App. 460, 508 P.2d 347 (1973). We do not address the equal protection and overbreadth arguments because they were not made below. *Richter v. Dairy Queen of*

*Southern Arizona, Inc.,* 131 Ariz. 595, 643 P.2d 508 (App.1982).

### STANDARD OF REVIEW

The parties dispute the applicable standard of review, the city contending that our only obligation is to determine if there is substantial evidence to support the trial court's decision and the F.O.E. contending that we are not bound by the conclusions reached by the trial court but are free to draw our own conclusions from the facts found by the trial court. A precise determination of the applicable standard is not necessary, however, because our decision is strictly one of law. Although the parties dispute minor points of fact, the essential facts are undisputed.

### PLACE OF PUBLIC ACCOMMODATION

The analysis must begin with the ordinance. The Tucson ordinance provides, in part, as follows:

It is a violation of this article:

(a) For any owner, operator, lessee, manager, agent or employee of any place of public accommodation to discriminate against any person ... because of race, color, religion, ancestry, sex, age, physical handicap, national origin, sexual or affectional preference, or marital status....

Tucson City Code § 17–12. "Place of public accommodation" is defined as "facilities, establishments, accommodations, services, commodities, or use offered to or enjoyed by the general public, including but not limited to" such places as hotels, restaurants, taverns, theaters, retail establishments, places of public amusement and recreation, educational facilities, public conveyances, and funeral parlors and places of burial. Tucson City Code § 17–11(b). None of the establishments expressly defined in the ordinance specifically includes an organization such as the F.O.E.

The evidence presented at the administrative hearing was that the F.O.E. building is open six days a week from 10:30 a.m. to 1:00 a.m. and from noon to 1:00 a.m. on Sundays. During those hours, the aerie sponsors bingo games for four hours at a

time three days a week. Those games are required under the aerie's bingo license to be open to the public, and it is undisputed that females attend those games. The F.O.E. also holds a public fish fry once a month, and the auxiliary holds a public smorgasbord once a month. Other public functions are also held occasionally. There was testimony that the organization has sponsored dances and several Elvis Presley impersonator shows that were open to the public.

The aerie itself holds a weekly one-hour meeting that is open to members only. During that meeting, the members participate in various rituals established by the national organization. The auxiliary meets every two weeks, and those meetings are open only to women. The boards of trustees of the two groups meet jointly once a month to coordinate events, and the aerie's board has the final say in the event of a dispute. The F.O.E. also operates a bar and restaurant that is open only to members and their guests, but the testimony was that persons attending the bingo games may purchase alcohol by giving money to a member who purchases a drink from the bar. The same is true at the fish frys. In addition, the F.O.E. rents out the building for events such as weddings, baptisms, birthday parties, and anniversaries.

■ The F.O.E. argues that it does not come within the ordinance because it has a mixture of public and private activities. The ordinance does not address that type of facility, but we see nothing in the ordinance language that excludes a mixed facility. The fact that many more of its activities are public than private brings it within the ordinance.

### ORDINANCE EXCLUSION

■ The F.O.E. next contends that it is exempt from compliance under one of the exclusions of the ordinance. Section 17–13 of the Tucson City Code provides in part:

(a) This article shall not be applicable to ... any bona fide social, fraternal, educational, civic or religious organization ... when the profits of the accom-

modations, advantages, facilities and services, above reasonable and necessary expenses, are solely for the benefit of such organization....

The city contends that the proper approach to the ordinance is to first determine if the facility is a place of public accommodation. If it is, the city argues, then the analysis is complete and the exclusion need never be examined. We disagree. Legislation must be construed as a whole in order to determine its meaning, *State ex rel. Morrison v. Jay Six Cattle Co.*, 85 Ariz. 220, 335 P.2d 799 (1959), and effect must be given to all its language. *Roller Village, Inc. v. Superior Court*, 154 Ariz. 195, 741 P.2d 328 (App.1987). It is clear from the language of the ordinance that a facility or organization can be a place of public accommodation but be exempt from its application because it comes within one of the exceptions.

The evidence presented at the administrative hearing was that one of the primary functions of the F.O.E. is to raise funds for charity. Before an event is held, the chairperson designates the charity to which the funds raised are to be given. The testimony was that 100 per cent of the funds raised is given to the charity and that the expenses of the event are paid from membership dues and the profits from the sale of food and liquor in the restaurant and bar.

The F.O.E. contends that it is exempt from the ordinance because it is a bona fide fraternal organization. It also notes that it is a non-profit organization for the purposes of the Internal Revenue Service and the State of Arizona. Because the language of those statutes is not the same as the language of the ordinance exemption, however, and because neither the statutes nor their requirements were mentioned at the administrative hearing, we do not address them.

■ The disputed issue as to the application of the exclusion revolves around the language requiring the organization's profits to be "solely for the benefit" of the organization. It is undisputed that the F.O.E. raises a large amount of money annually that is given to a number of chari-

ties. "Benefit" is defined as "[a]dvantage; profit; fruit; privilege; gain; interest." Black's Law Dictionary 158 (6th ed.1990). Statutes must be construed so as to give effect to every word. *State v. Superior Court*, 113 Ariz. 248, 550 P.2d 626 (1976). We believe the language of the ordinance requires the profits from the organization's fundraisers to be applied only to the organization in order for the exemption to apply. Because the F.O.E. chooses to apply those funds to charity rather than to retain them, it does not come within the exclusion.

### FREEDOM OF ASSOCIATION

The F.O.E. next contends that the interpretation of the ordinance employed by the trial court, and now by this court, violates its members' rights to freedom of association. That argument requires an analysis of the applicable United States Supreme Court cases.

As the Court observed in *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), the term "freedom of association" encompasses two distinct applications. The first involves a person's "choices to enter into and maintain certain intimate human relationships." *Id.* at 617, 104 S.Ct. at 3249, 82 L.Ed.2d at 471. The second involves the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* at 618, 104 S.Ct. at 3249, 82 L.Ed.2d at 471. Finally, the Court noted that "when the State interferes with individuals' selection of those with whom they wish to join in a common endeavor, freedom of association in both of its forms may be implicated." *Id.*

■ The types of associations that are subject to constitutional protection under the right of freedom of intimate association generally involve family relationships, those that, "by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also

distinctively personal aspects of one's life." *Id.* at 619–20, 104 S.Ct. at 3250, 82 L.Ed.2d at 472. Distinguishing attributes of such relationships are "relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Id.* at 620, 104 S.Ct. at 3250, 82 L.Ed.2d at 472.

The evidence here shows that the F.O.E. is not a small organization; it has some 900 members, the same as the largest of the local units involved in *Board of Directors of Rotary International v. Rotary Club of Duarte,* 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987). As in that case, there is no upper limit on membership in the local aerie. As in both the *Jaycees* and *Rotary Club* cases, there is a low degree of selectivity for membership. The only requirements for membership, besides being a male, are being over 21, believing in a supreme being, and not being a member of the Communist party. Those are not requirements that reflect an intent to associate only with persons who share a "special community of thoughts, experiences and beliefs." *Jaycees,* 468 U.S. at 620, 104 S.Ct. at 3250, 82 L.Ed.2d at 472. As for the attribute of exclusion from others in critical aspects of the relationship, the testimony was that the aerie holds a one-hour weekly meeting during which various rituals are recited. The members testified, however, that the primary purpose of the organization is to raise money for charities. The meetings that relate to that aspect of the organization are joint meetings of the boards of the aerie and the auxiliary, meetings that do not involve exclusion from others. The social activities of the organization are primarily conducted publicly. Therefore, we conclude that the members' rights to freedom of intimate association are not constitutionally protected. *Jaycees, supra.*

■ The ordinance, however, clearly infringes upon the F.O.E.'s freedom of expressive association because it interferes with the F.O.E.'s internal organization or affairs. *Jaycees, supra.* As the Court

noted there, however, that right is not absolute. "Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Id.* at 623, 104 S.Ct. at 3252, 82 L.Ed.2d at 475. The City of Tucson's compelling interest in eliminating discrimination is similar to the State of Minnesota's in the *Jaycees* case. Just as in that case, the ordinance involved here "does not aim at the suppression of speech, does not distinguish between prohibited and permitted activity on the basis of viewpoint, and does not license enforcement authorities to administer the statute on the basis of such constitutionally impermissible criteria." *Id.* at 623, 104 S.Ct. at 3253, 82 L.Ed.2d at 475.

The F.O.E. has not demonstrated that the ordinance will impose serious burdens on the freedom of expressive association of its members. Indeed, one of the exhibits at the administrative hearing was a letter from the national organization indicating that local ordinances take precedence over the aerie's regulations and that the Tucson aerie has permission to admit women and to adjust their activities accordingly. A number of members of the aerie testified that they did not want women members, but that attitude is precisely the aim of the ordinance.

We conclude that the slight infringement imposed on the members' right of expressive association is justified by the city's compelling interest in eradicating sexual discrimination.

Affirmed.

HOWARD and CARRUTH, JJ.,** concur.

---

** A Judge of the Pima County Superior Court

authorized and assigned to sit as a Judge on the