

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

November 23, 1994

Ms. Nora A. Linares
Executive Director
Texas Lottery Commission
P.O. Box 16630
Austin, Texas 78761-6630

Opinion No. DM-305

Re: Whether section 11(u) of article 179d, V.T.C.S., the Bingo Enabling Act, contravenes the Americans with Disabilities Act, 42 U.S.C. ch. 126 (RQ-638)

Dear Ms. Linares:

Your predecessor agency asked a series of questions concerning the application of of the Bingo Enabling Act, V.T.C.S. art. 179d. The basic concern is whether the act applies to a device called a PowerBingo System, and, if so, whether that section is preempted by the Americans with Disabilities Act (the "ADA").

The first question is whether the PowerBingo System is covered by article 179d, section 11(u). The section reads as follows:

> A licensed authorized organization may not conduct a bingo game in which any player uses or is assisted by a computerized or electronic device that is used instead of or in conjunction with the player's traditional paper or nondisposable bingo card.

To determine whether the PowerBingo System is prohibited by section 11(u), we must first determine whether it is a "computerized or electronic device." As your predecessor agency described the device, it

> uses a keypad unit. The number of cards sold to the player are entered into the unit by the cashier. That number of cards sold and the numbers on the cards are stored in the unit's memory. The player enters the numbers called on the keypad and the unit signals the player when he or she has a bingo on one of the cards.

Based upon these representations to us as to how the system operates, it appears to us to be a "computerized or electronic device that is used instead of or in conjunction with" the traditional bingo card. The system does therefore fall within the ambit of section 11(u) of the Bingo Enabling Act.

The question is whether "the Americans With Disabilities Act require[s] the Commission to allow use of the device by disabled persons without first exhausting the possibility of using other aids that would not violate section 11(u)."

The Americans With Disabilities Act, 42 U.S.C. ch. 126, provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *Id.* § 12182(a).

In order to determine whether the Americans with Disabilities Act would apply to the proposed system at issue here, we must first determine whether a licensed bingo operation is a place of public accommodation for the purposes of the act. The act contains a definition of public accommodations which includes, *inter alia,*

> (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

> (D) an auditorium, convention center, lecture hall, or other place of public gathering;

> . . . .

> (I) a park, zoo, amusement park, or other place of recreation.

*Id.* § 12181(7).

It would appear that a licensed bingo operation would fit within one of those definitions. We note, however, that there is very little authority on the question. Our research has produced only one case touching upon the subject, *Fraternal Order of Eagles, Inc. v. City of Tucson,* 816 P.2d 255 (Ariz. Ct. App. 1991). In that case, an Arizona appellate court found that a fraternal organization which engaged in both public and private activities was a place of public accommodation for the purposes of a municipal civil rights statute prohibiting the exclusion of women as members. One of the public activities the court cited was bingo:

> [T]he [club] sponsors bingo games for four hours at a time three days a week. Those games are required under the [club]'s bingo license to be open to the public, and it is undisputed that females attend those games.

*Id.* at 257.

Non-discrimination requirements of the sort described in the *Eagles* case also apply to any licensed bingo operator in Texas. Section 11(h) of the Bingo Enabling Act declares:

> A person may not be denied admission to a game or the opportunity to participate in a game because of race, color, creed, religion, national origin, sex, or handicap or because the person is not a member of the licensed authorized organization that is conducting the game.

In our view, therefore, a court presented with the issue of whether a bingo operation licensed in Texas was a place of public accommodation would answer that question in the affirmative.

It has been suggested that the PowerBingo System constitutes an auxiliary aid or service of the sort referred to in the Equal Employment Opportunity Commission ("EEOC") rules which have been adopted to implement the act. EEOC regulation section 36.303(a) requires that:

> A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense.

28 C.F.R. § 36.303(a).

Both your predecessor agency and the proponents of the PowerBingo System suggested that the crucial issue for this regulation is whether the proposed system would "fundamentally alter" the game of bingo, but disagreed as to whether this is the case. In our view, the question of whether the PowerBingo System would fundamentally alter bingo is a question of fact which is not amenable to the opinions process, and which we therefore cannot address. If the Texas Lottery Commission determines as a matter of fact that this system fundamentally alters bingo, then the ADA would not require its use, and there would be no conflict between the ADA and section 11(u) of the Bingo Enabling Act. The commission must make that determination in the first instance.

Your predecessor agency further suggested that, even if the PowerBingo System were the best auxiliary aid available, the ADA and EEOC regulations would not necessarily require it. As that agency's Bingo Division director's September 23, 1993, letter states, the EEOC's analysis of regulation section 36.303(a) notes that "[a]uxiliary aids and services include a wide range of services and devices for ensuring effective communication. Use of the most advanced technology is not required so long as effective communication is ensured."

The question as to whether there may be other effective means of ensuring the participation of disabled persons in the game of bingo which "would not violate [s]ection 11(u) [of the Bingo Enabling Act]" is also a fact question not amenable to the opinions process, which we must decline to answer. Should the Texas Lottery Commission determine that there are such alternatives, then again the PowerBingo System would not be required by the ADA.

The last question posed is whether, if the PowerBingo System were approved for the limited purpose of complying with the ADA and the rules the EEOC promulgated under it, section 36.301(c) of the EEOC rules would prohibit charging a disabled person a fee for its use. That section states:

> A public accommodation may not impose a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the cost of measures, such as the provision of auxiliary aids . . . that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.

*Id.* § 36.301(c).

In our view, this regulation does forbid the imposition of a fee for the use of this service. If the PowerBingo System were to escape the strictures of the Bingo Enabling Act, it would only be able to do so as an auxiliary aid necessary to provide handicapped players with nondiscriminatory treatment. Accordingly, licensed operations could not, consistently with the EEOC rules, charge for the provision of such an aid.

## S U M M A R Y

> A device which uses a keypad and an electronic memory to aid a player in the game of bingo is a "computerized or electronic device" forbidden by article 179d, section 11(u), V.T.C.S. Whether such a device, if used as an auxiliary aid by a handicapped person in order to permit such a person the nondiscriminatory treatment mandated by the Americans with Disabilities Act, would "fundamentally alter" the game of bingo, is a question of fact that must be determined by the Texas Lottery Commission (the "commission"). Whether there may be alternative aids or services available to such a handicapped person which would not violate article 179d, section 11(u), must also be determined by the commission. Were such a device made available for the limited purpose described here, Equal Employment Opportunity Commission regulations would prohibit the imposition of a surcharge for its use.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

DREW T. DURHAM
Deputy Attorney General for Criminal Justice

JAVIER AGUILAR
Special Assistant Attorney General

RENEA HICKS
State Solicitor

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by James Tourtelott
Assistant Attorney General